UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LIBERTY MUTUAL GROUP INC.
as subrogee of BODGER SEEDS, LTD.,

                                                                                                      08 Civ. 00223 (JSR)

                      Plaintiff,

        - against -

MEDITERRANEAN SHIPPING COMPANY, S.A.          Before:
                                                                                    Hon. Jed S. Rakoff

                    Defendant.
------------------------------------------------------------------------X

## MEMORANDUM OF LAW OF DEFENDANT MEDITERRANEAN SHIPPING COMPANY, S.A. IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

LYONS & FLOOD, LLP
Attorneys for Defendant
MEDITERRANEAN SHIPPING
COMPANY, S.A.
65 West 36th Street, 7th Floor
New York, New York 10018
(212) 594-2400

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES……………………………………………………….. ii

STATEMENT OF MATERIAL FACTS……………………………………………1

ARGUMENT…………………………………………………………………………..3

      POINT I      THE DAMAGE TO THE CARGO WAS CAUSED
                            BY SWEAT, A PERIL OF THE SEA UNDER COGSA……..3

      POINT II     THE SWEAT DAMAGE WAS UNAVOIDABLE…………...5

CONCLUSION………………………………………………………………………..6

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*Associated Metals and Minerals Corp. v. Laiva*, 858 F.2d 674 (11th Cir. 1988)…….3, 5

*Cal. Packing Corp. v. The Empire State (Voyage 58)*, 180 F. Supp. 19
(N.D. Cal. 1960)……..…………………………………………………………………...3

*Cal. Packing Corp. v. Matson Navigation Co.*, 1962 AMC 2651
(Cal. Mun. Ct. Oct. 20, 1962)……………………………………………………….4

*Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174 (2d Cir. 1990)………….4

*Gen. Foods Corp. v. United States*, 104 F. Supp. 629 (S.D.N.Y. 1952)………………4

*Hershey Chocolate Corp. v. The Mars*, 172 F. Supp. 321 (E.D. Pa. 1959)…………...4

*Standard Brands, Inc. v. Thos. & Jno. Brocklebank, Ltd.*, 81 F. Supp. 670
(S.D.N.Y. 1948)…………..…………………………………………………………..3, 5

*W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118 (2d. Cir. 1990)…………………...6

*Wessels v. The Asturias*, 126 F.2d 999 (2d Cir. 1942)………………………………...4


**Statutes**
46 U.S.C.S. § 30706……………………………………………………………………3

**PRELIMINARY STATEMENT**

Defendant Mediterranean Shipping Company, S.A. ("MSC") submits this Memorandum of Law in support of its motion for summary judgment.

The central issue in this case is who should bear the responsibility for fresh water sweat damage to cargo when the defendant carrier provided the shipper with a standard dry container and the shipper loaded, locked, and sealed the cargo into the container prior to carrier's receipt. MSC contends that under the Carriage of Goods By Sea Act, there is no genuine issue of material fact as to whether MSC can prove the defense of unavoidable sweat, and MSC is therefore not liable for the cargo damages alleged in plaintiff's Complaint.

**STATEMENT OF MATERIAL FACTS**

The material facts for which there are no genuine issues are set forth in the Statement of Facts filed in support of this motion pursuant to Rule 56.1 of the Local Civil Rules to which the Court is respectfully referred. However, below is a summary of the relevant facts.

Environmental Seed Producers ("ESP") contracted with MSC to transport a shipment of 648 bags of flower seeds from Tanga, Tanzania to Long Beach, California (the "subject shipment") in January of 2007. MSC provided the Tanzanian shipper, Maua Arusha Ltd. ("Maua"), with a twenty (20) foot long dry shipping container and never received any complaint that the container was damaged or unfit for shipper's purposes. Maua stuffed the 648 flower seed bags into the container and MSC issued Bill of Lading number MSCUTA011430 on January 26, 2007. Clause 17 of the bill of lading states that "[i]f the shipper or his servant stuffs the container, the Merchant shall be

responsible for the proper stowage and securing of the goods to insure ventilation and to avoid shifting."

The container's journey from Tanzania to the United States was made aboard four different MSC operated vessels during the winter and early spring of 2007: the M/V MSC ROYAL ZANZIBAR, the M/V MSC NAMIBIA, the M/V MSC SILVANA, and the M/V MSC ILONA. The container was stowed both above deck and below deck on these vessels at different times throughout the seventy-five (75) days of transit.

The M/V MSC ILONA arrived at the terminal in Long Beach, California on or about April 10, 2007. The container was then picked up and delivered by truck to ESP's facility in Lompoc, California. Upon arrival, the container's ventilation slots were found completely unobstructed and no damage to the container was noted. At this time, the container was opened and the cargo was inspected by ESP. Water damage to a number of the bags was apparent. The majority of the wet bags had been pressed against the container's side panels and rear doors.

A joint survey was performed on April 13th and at that time cargo samples were tested for seawater contamination. The test results and inspection revealed that the damage was caused by fresh water, not seawater, and that this wetting was caused by the flower seeds sweating. This sweating led to the formation of condensation on the sides of the container, thereby wetting the bags of cargo which were pressed against the interior panels and rear doors.

MSC's surveyor, Captain Arun Jolly, subsequently performed an inspection of the container itself. He found the container to be in satisfactory condition with no apparent visible damage or defects.

As a result of the wetting, plaintiff contended that the shipment had little to no value and the cargo was subsequently disposed of. Plaintiff has since filed suit seeking damages in the amount of $69,825.75.

## ARGUMENT

### POINT I

### THE DAMAGE TO THE CARGO WAS CAUSED BY SWEAT, A PERIL OF THE SEA UNDER COGSA

It is undisputed that this claim is subject to the Carriage of Goods By Sea Act ("COGSA") by virtue of the paramount clause in MSC's bill of lading. (Deconinck Aff. Ex. A). For the purposes of this motion, MSC will assume that plaintiff has made out a *prima facie* case for cargo damage.

Under section 30706 of COGSA, a carrier or vessel owner is not liable for damage to cargo that is caused by a peril of the sea. *See* 46 U.S.C.S. § 30706(b)(1) (2008). Courts have long held that "sweating" of the cargo is just such a peril. *See Associated Metals and Minerals Corp. v. Laiva*, 858 F.2d 674, 678 (11th Cir. 1988) (holding "it is well established that 'sweating' is a peril of the sea"); *Standard Brands, Inc. v. Thos. & Jno. Brocklebank, Ltd.*, 81 F. Supp. 670, 671 (S.D.N.Y. 1948); *Cal. Packing Corp. v. The Empire State (Voyage 58)*, 180 F. Supp. 19, 21 (N.D. Cal. 1960). Sweat has been defined by courts as "the condensation of atmospheric moisture on the surface of [cargo] caused when warm air containing moisture comes in contact with the cold surface of [cargo],[1] when the air reaches its 'dew point,' [which is] the temperature at which the capacity of the air to hold moisture is exceeded and it surrenders its moisture

---

[1] In the instant case, the cold surface was the side panels of the container.

3

to any relatively cold surface." *Cal. Packing Corp. v. Matson Navigation Co.*, 1962 AMC 2651 (Cal. Mun. Ct. Oct. 20, 1962).

Based upon the satisfactory condition of the container and the pattern of the wetting, it was apparent that the cargo damage was due to fresh water condensation "sweat" by the organic cargo over the course of its lengthy winter transit. (Jolly Aff. ¶¶ 5-8). This condensation was the result of the subject cargo releasing its inherent moisture, which then formed on the interior container panels, and subsequently wet the bags pressed against the panels and rear door of the container. This conclusion is supported by plaintiff's surveyor, Dennis Berri of Vericlaim, who noted that "the majority of the wet bags were found along the walls of the container and at the rear doors." (Flood Aff. Ex. B).

Courts have held that organic cargo, with properties similar to flower seeds, are likely to sweat over the course of a long voyage during the winter months. *See Wessels v. The Asturias*, 126 F.2d 999, 1000 (2d Cir. 1942) (stating because cocoa beans are "soft and moist . . . loaded in a hot and humid climate . . . [and transported] from the Gulf Stream into cold coastal waters in the course of the voyage," they are "quite likely to sweat" during the winter months); *Gen. Foods Corp. v. United States*, 104 F. Supp. 629, (S.D.N.Y. 1952); *Hershey Chocolate Corp. v. The Mars*, 172 F. Supp. 321, 322 (E.D. Pa. 1959). Moreover, no evidence has been produced suggesting that something other than sweat led to the damage. *See Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (finding that raising a genuine issue of material fact requires "more than a scintilla of evidence, and more than some metaphysical doubt as to the material facts").

Therefore, there is no genuine issue of material fact as to whether or not the fresh water damage to the subject cargo was the result of sweat.

## POINT II

## THE SWEAT DAMAGE WAS UNAVOIDABLE

In order for a carrier to be relieved of liability for sweat damage under COGSA, the carrier must show the "sweating was unavoidable despite all reasonable efforts to avoid it by ventilation or otherwise." *Associated Metals*, 858 F.2d at 678; *see also Standard Brands*, 81 F. Supp. at 671 (finding "sweat is a peril of the sea only when the carrier has not been guilty of negligence in handling the cargo, and the carrier has the burden of proof"). Although this precise issue has rarely been decided by this Court in the context of containerized cargo, the undisputed facts here demand that MSC be exonerated from liability.

MSC did all that it could have to prevent sweat and was not negligent in handling or stowing the cargo. As discussed above, at shipper's request, MSC provided a standard dry shipping container. The container was of a type used all over the world to ship all kinds of cargo. It was equipped with ventilation slots designed to inhibit the accumulation of sweat and there is no evidence that these slots were unobstructed when received by ESP. (Flood Aff. Ex. A). Moreover, no evidence has been produced that suggests that they were ever obstructed during transit. Furthermore, MSC never received any complaints claiming that the subject container was in any way defective, damaged, or unfit for the voyage. The shipper had an opportunity to inspect the container prior to loading it and deemed that it was fit for the shipment.

The shipper, and not MSC, stuffed the container with the 648 bags of flower seeds, and then locked and sealed it.  Pursuant to Clause 17 of MSC's bill of lading, the shipper thereby became responsible for properly stowing and securing the cargo to insure adequate ventilation.  (Deconinck Aff. Ex. A).  MSC never had the chance to inspect the cargo inside the container or the manner in which it was stuffed.  It would therefore be unfair to hold MSC liable for sweat damage that may have been caused or exacerbated by the improper packing of a dry container that it had no opportunity to properly inspect.

There is no evidence of anything out of the ordinary occurring during transit of the subject shipment and no proof of any negligent conduct on MSC's part.  *See W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d. Cir. 1990) (stating "non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material fact, or defeat the motion through mere speculation or conjecture") (internal citations omitted).  Moreover, all of the evidence submitted supports MSC's position that the container was in good condition throughout the relevant period.  Therefore, there is no genuine issue of material fact as to whether or not the sweat damage was avoidable.

## CONCLUSION

MSC provided an adequate container, adequate ships, and adequate care for the cargo.  For the foregoing reasons, MSC respectfully requests that the Court grant its motion for summary judgment in its entirety, and for such other and further relief as the Court sees fit.

Dated: August 8, 2008

                                        LYONS & FLOOD, LLP
                                        Attorneys for Defendant
                                        MEDITERRANEAN SHIPPING
                                        COMPANY S.A.


                                        _____
                                        Edward P. Flood (EPF-5797)
                                        Michael A. Namikas
                                        65 West 36th Street, 7th Floor
                                        New York, New York 10018
                                        (212) 594-2400


U:\FLOODDOC\2549114\Motions\Motion for Summary Judgment\MOL - Summ Jud.doc

**CERTIFICATE OF SERVICE**

Erika Tax declares and states that:

I am not a party to these actions, am over 18 years of age and reside in Queens, New York. I am an employee with Lyons & Flood, LLP, attorneys for defendant MEDITERRANEAN SHIPPING COMPANY, S.A., with offices at 65 West 36th Street, 7th Floor, New York, New York 10018.

On August 8, 2008, I served true copies of the Memorandum of Law in Support of Summary Judgment upon:

> BADIAK & WILL, LLP
> Attorney for Plaintiff
> 106 Third Street
> Mineola, New York 11501
> Attn: Alfred J. Will, Esq.
> Firm Ref: 07-J-011-AW

by U.S. Mail, first-class postage pre-paid, addressed to the last known address of the addressees as indicated above.

Executed on: August 8, 2008

_____
Erika Tax

U:\FLOODDOC\2549114\Motions\Motion for Summary Judgment\MOL - Summ Jud.doc