BADIAK & WILL, LLP
Attorneys for Plaintiff
LIBERTY MUTUAL GROUP, INC.
As Subrogee of BODGER SEEDS, LTD.
106 Third Street
Mineola, New York 11501
(516) 877-2225
Our Ref.: 07-J-011-AW/LS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X
LIBERTY MUTUAL GROUP, INC.,
As subrogee of BODGER SEEDS, LTD.,

                Plaintiff,                  08 CV 00223 (JSR)

   - against -                        **ECF CASE**

MEDITERRANEAN SHIPPING
COMPANY, S.A.,

                Defendant.
----------------------------------------------------X

**PLAINTIFF LIBERTY MUTUAL GROUP, INC., AS
SUBROGEE OF BODGER SEEDS, LTD.'S MEMORANDUM OF
LAW IN SUPPORT OF SUMMARY JUDGMENT MOTION**

ALFRED J. WILL
LISA A. SCOGNAMILLO
    Of Counsel

# **TABLE OF CONTENTS**

|  | **PAGE** |
|---|---|
| Table of Cases Cited.................................................................. | ii, iii |
| Table of Statutes Cited............................................................... | iii |
| Preliminary Statement................................................................ | 1 |
| Facts............................................................................................ | 1 |
| Argument.................................................................................... | 3 |
| Conclusion.................................................................................. | 11 |

POINT I

A *Prima Facie* Case Against A Carrier Is Made By Showing Delivery
In Good Condition And Receipt In Bad Order.............................. 3

POINT II

MSC Cannot Meet Its Burden Of Exculpating
Itself From Liability....................................................................... 4

A. MSC Cannot Establish That a COGSA Exception
Applies.......................................................................................... 5

B. MSC Failed To Exercise Due Diligence To Make The
Vessel Seaworthy And Properly Care For The Cargo
Of Flower Seeds........................................................................... 8

POINT III

Summary Judgment Is Warranted Because There
Are No Genuine Issues Of Material Fact...................................... 10

Conclusion.................................................................................... 11

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

Associated Metals and Minerals Corp. v. Etelae Suomin Laiva,
858 F.2d 674, (11th Cir. 1988)................................................................ 3, 5, 6, 7, 10

Atlantic Banana Co. v. M.V. Calanca, 342 F.Supp 477
(S.D.N.Y. 1972), aff'd, 489 F.2d 572 (2nd Cir. 1974).......................... 7

Atlantic Mutual Ins. Co., Inc. v. CSX Lines, 432 F.3d 428,
(2d Cir. 1988)................................................................................................ 3, 4

Caterpillar, Inc. v. M/V Karonga, 2008 A.M.C. 1128,
1132 (S.D.N.Y. 2008)................................................................................. 10

Celotex Corp v. Catrett, 477 U.S. 317................................................... 10

Compagnie De Navigation Fraissinet & Cyprien Fabre, S.A.
v. Mondial United Corp., 316 F.2d 163 (5th Cir. 1963)....................... 6

Copco Steel & Engineering Co. v. S/S Alwaki, 131 F.Supp
332 (S.D.N.Y. 1955)..................................................................................... 6

General Foods Corp. v. United States, 104 F.Supp 629
(S.D.N.Y. 1952)............................................................................................. 6, 7, 8, 9, 10

Itel Container Corp. v. M/V Titan Scan, 139 F.3d 1450
(11th Cir.), cert, denied, 525 U.S. 962 (1998)......................................... 3

Metropolitan Coal Co. v. Howard, 155 F.2d 780 (2nd Cir. 1946).......... 5, 9

New England Petroleum Co. v. O.T. Shipping Ltd. of London,
732 F.Supp 1276 (S.D.N.Y. 1990).......................................................... 3, 4, 7

Petition of Isbrandtsen Co., Inc., 201 F.2d 281 (2nd Cir. 1953)............. 3

Philippine Sugar Centrals Agency v. Kokusai Kisen Kabushiki
Kaisha, 106 F.2d 32 (2nd Cir. 1939)........................................................ 9

Schnell v. The Vallescura, 293 U.S. 296 (1934)................................... 5, 7, 9, 10

Siderius, Inc. v. M.V. AMILLA, 880 F.2D 662
(2nd Cir. 1989)...................................................................................... 7, 9, 10

Spencer Kellogg & Sons v. Great Lakes Transit Corp., 32 F.Supp
520 (E.D. Mich. 1940).......................................................................... 4, 9

Standard Oil Co. (N.J.) v. Anglo-Mexican Petroleum Corp. (The
Esso Providence), 112 F.Supp 630 (S.D.N.Y. 1953).............................. 9

Transatlantic Marine Claims Agency, Inc., v. M/V OOCL SKOU,
137 F.3d 94 (2d Cir. 1998).................................................................... 4

Travelers Indemnity Co. v. SS Polarland, 418 F.Supp 985
(S.D.N.Y. 1976), aff'd mem., 562 F.2d 39 (2nd Cir. 1977)..................... 4

Wessels v. The Asturias, 126 F.2d 999 (2nd Cir. 1942)............................ 6, 10

**Statutes**

The Carriage of the Goods by Sea Act, 46 U.S.C. App. §1300
et seq....................................................................................................... 3

46 U.S.C. App. ¶1303............................................................................. 8

46 U.S.C. App. ¶1304............................................................................. 4

46 U.S.C. App. §1312............................................................................. 3

Fed. R. Civ. P. 56(c)................................................................................ 10

## PRELIMINARY STATEMENT

This is a subrogated cargo claim for damage to a shipment of flowers seeds transported from Tanzania to Long Beach, California in or about January 26, 2007 and delivered to the consignee in or about April 10, 2007. The shipment sustained water damage during ocean transit and the carrier failed to properly ventilate the cargo. Plaintiff moves for summary judgment on the issue of liability and submits this memorandum of law in support of the motion.

## FACTS

In or about January 2007, Maua Arusha Ltd. ("Maua") exported a shipment of flower seeds from Tanzania to California with an invoice value of $63,688.13. (Mbaga Aff. ¶ 3 and Mbaga Exh. 1).[1] Environmental Seed Producers ("ESP") was the consignee and Bodger Seeds Ltd., Plaintiff's subrogor, the importer of record. (Mbaga Aff. ¶ 3 and Mbaga Exh. 1).

Defendant Mediterranean Shipping Company, S.A. ("MSC") issued bill of lading number MSCUTA011430 for this shipment dated January 26, 2007. (Will Aff. ¶ 6 and Will Exh. 3). The bill of lading listed the shipment as "648 bags of flower seeds" in container number MSCU1550902 with seal number 1760518 ("Shipment"). (Will Aff. ¶ 7 and Will Exh. 3). The bill of lading expressly stated that the seal on the container was the *carrier's* seal. (Will Aff. ¶ 7 and Will Exh. 3). The bill of lading also noted that the cargo was received "CLEAN ON BOARD." (Will Aff. ¶ 6 and Will Exh. 3). The two vessels named in the bill of lading were ROYAL ZANZIBAR and ILONA. (Will Aff. ¶ 6 and Will Exh. 3). The container was apparently loaded aboard the ROYAL

---

[1] "Mbaga Aff. ¶ ___" refers to the numbered paragraphs contained in the Affirmation of Angelina Mbaga executed on August 7, 2008. "Mbaga Exh. ___" refers to the numbered exhibits annexed to the Mbaga Aff. The Mbaga Aff. is annexed as Exhibit 2 to the Affidavit in Support of Alfred J. Will sworn to on August 8, 2008 ("Will Aff.").

"Apolinar Aff. ¶ ___" refers to the numbered paragraphs contained in the Affidavit of Joseph Apolinar sworn to on July 24, 2008. The Apolinar Aff. is annexed as Exhibit 1 to the Will Aff.

ZANZIBAR in Tanzania and transloaded aboard the ILONA at a subsequent unknown time. (Will Aff. ¶ 7 and Will Exh. 3 and Will Exh. 4 [Vericlaim Survey] at page 3).

In or about April, 10, 2007, the Shipment was received by the consignee, Environmental Seed Producers ("ESP"), with water damage sustained during transit. (Will Aff. ¶ 11 and Will Exh. 4 [Vericlaim Survey] at pages 1, 5-6, 7; and Will Exh. 5 [Techno Marine Services Survey] at pages 3, 4, 5, 6). Thus, the flower seeds remained in the container for a period of not less than 75 days. (See Will Exh. 5 [Techno Marine Services Survey] at page 6 stating "the shipment was in the container for approximately 90 days.").

A joint survey on behalf of plaintiff and MSC was attended on April 17, 2007. Both plaintiff's surveyor, Vericlaim, and MSC's surveyor concluded that the cargo sustained water damage during transit. (Will Exh. 4 [Verclaim Survey] at page 7 and Will Exh. 5 [Techno Marine Services Survey] at page 5).

When the container left Maua's possession in Tanzania, the vents of the container were completely open and unobstructed, and Maua never instructed MSC to cover any of the vents. (Mbaga Aff. ¶ ¶ 6, 7). When the Shipment arrived at ESP's warehouse in California, the carrier's seals on the container were in tact and the vents completely open and unobstructed without any covering whatsoever. (Apolinar Aff. ¶ 5).

Upon delivery to the consignee, water damage to the flower seeds was noted. (Will Aff. ¶ 11 and Will Exh. 4 [Vericlaim Survey] at pages 1, 5-6, 7 and Will Exh. 5 [Techno Marine Services Survey] at pages 2, 3, 4, 5, 6). A total of 636 bags of flower seeds was damaged, leaving only 12 bags sound. (Will Exh. 4 [Vericlaim Survey] at page 8). Plaintiff's damages amount to $61,899.35. (Will Aff. ¶ 14; Will Exh. 4 [Vericlaim Survey] at pages 6 and 7).

2

To date, neither log books nor ventilation records for either the ROYAL ZANZIBAR or ILONA have been produced although duly demanded. (Will Aff. ¶¶ 12, 13 and Will Exhs. 6, 7).

ARGUMENT

POINT I.

A *PRIMA FACIE* CASE AGAINST A CARRIER
IS MADE BY SHOWING DELIVERY IN GOOD CONDITION
AND RECEIPT IN BAD ORDER.

The Carriage of the Goods by Sea Act, 46 U.S.C. App. §1300 *et seq.*, (COGSA) applies *ex proprio vigore* to all shipments to or from a United States port. 46 U.S.C. App. § 1312; *Itel Container Corp. v. M/V Titan Scan,* 139 F.3d 1450, 1452-53 (11th Cir.), *cert. denied,* 525 U.S. 962 (1998); *Petition of Isbrandtsen Co., Inc.,* 201 F.2d 281 (2nd Cir. 1953). Since the shipment at issue here was from Tanzania to California (Will Aff. ¶ 6 and Will Exh. 3), COGSA applies.

It is well-established that a *prima facie* case of entitlement to recovery under COGSA against a carrier is made by showing delivery to that carrier in good condition and discharge at destination in a damaged condition. *Atlantic Mutual Ins. Co., Inc. v. CSX Lines,* 432 F.3d 428, 433 (2d Cir. 2005); *Associated Metals and Minerals Corp. v. Etelae Suomin Laiva,* 858 F.2d 674, 677 (11th Cir. 1988); *New England Petroleum Co. v. O.T. Shipping Ltd. of London,* 732 F. Supp 1276, 1283 (S.D.N.Y. 1990).

Plaintiff has established a *prima facie* case against MSC based upon the undisputed facts. The applicable bill of lading issued by MSC expressly states the cargo was "CLEAN ON BOARD." (Will Exh. 3). The Second Circuit has repeatedly held that "'the issuance of a clean bill of lading creates a presumption of delivery in good condition favorable to the plaintiff.'" *Atlantic Mutual,* 432

3

F.2d at 433 (quoting *Transatlantic Marine Claims Agency, Inc. v. M/V OOCL SKOU*, 137 F.3d 94, 98 (2d Cir. 1998)).

It is also undisputed that the cargo sustained water damage during transit. Plaintiff's surveyor noted "heavy rust stains and obvious signs of water contact" which "appear to have occurred during transit." (Will Aff. Exh. 4 [Vericlaim Survey] at pages 5-6, 7). Likewise, MSC's surveyor, Captain Arun K. Jolly of Techno Marine Services, also noted that the bags "were wet and had rust stains." (Will Exh. 5 [Techno Marine Services Survey] at page 3). Captain Jolly also similarly concluded that the wetting occurred during transit, speculating it was "effected by condensation within the confines of the container resulting from the inherent moisture within the shipment of different varieties of flower seeds." (Will Aff. Exh. 5 [Techno Marine Services Survey] at page 5).

Thus, based upon the undisputed facts, plaintiff has established a *prima facie* case for recovery against MSC.

## POINT II.

## MSC CANNOT MEET ITS BURDEN OF EXCULPATING ITSELF FROM LIABILITY.

Once the plaintiff establishes a *prima facie* case under COGSA, the burden shifts to the carrier to prove that loss was not the result of its negligence or that it qualifies for one of the statutory exceptions listed in COGSA (46 U.S.C. App. ¶ 1304). *Atlantic Mutual*, 432 F.3d at 433; *New England Petroleum Co.*, 732 F. Supp. at 1282; *Travelers Indemnity Co. v. SS Polarland*, 418 F. Supp. 985, 987 (S.D.N.Y. 1976), *aff'd mem.* 562 F.2d 39 (2nd Cir. 1977). In other words, the burden of explaining what happened is on the carrier. *Spencer Kellogg & Sons v. Great Lakes Transit Corp.*, 32 F. Supp. 520, 529 (E.D. Mich. 1940).

The rationale for this rule is a practical one and is based upon fairness and logic – that the carrier is the party which is in the unique position of knowing what happened. As the United States Supreme Court so aptly stated in a leading case:

> The reason for the rule is apparent. [The carrier] is a bailee intrusted with the shipper's goods, with respect to the care and safe delivery of which the law imposes upon him an extraordinary duty. Discharge of the duty is peculiarly within his control. All the facts and circumstances upon which he may rely to relieve him of that duty are peculiarly within his knowledge and usually unknown to the shipper. In consequence, the law casts upon him the burden of the loss which he cannot explain or, explaining, bring within the exceptional case in which he is relieved from liability.

*Schnell v. The Vallescura*, 293 U.S. 296, 303 (1934). *Accord Metropolitan Coal Co. v. Howard*, 155 F.2d 780, 784 (2nd Cir. 1946) (L. Hand, J.) (carrier "has access to all the facts relating to what diligence he has in fact used, and the shipper has none").

### A. MSC Cannot Establish That a COGSA Exception Applies.

MSC's surveyor, Captain Jolly, has *speculated* that the water damage sustained by the flower seeds during transit "was *apparently* effected by condensation within the confines of the container resulting from the inherent moisture within the shipment of different varieties of flower seeds." (Will Aff. Exh. 5 at page 5) (emphasis added). In other words, MSC claims that the alleged tendency of the seeds to 'sweat' caused condensation which resulted in the flower seeds sustaining water damage during transit.[2]

It is common knowledge in the maritime industry that proper ventilation will avoid sweating and condensation. *See Associated Metals*, 858 F.2d at 678 (noting the only way to prevent sweating

---

[2] "'Sweating' is a term of art in the maritime cargo industry which refers to the formation of condensation on cargo surfaces." *Associated Metals*, 858 F.2d at 676 fn8.

5

of steel during transport from cold to warm climate is through ventilation). In order for a carrier to avoid liability on the basis that 'sweating' is a peril of the sea within the meaning of COGSA, "the carrier bears the burden of proving that sweating was unavoidable despite all reasonable efforts to avoid it by ventilation or otherwise." *Associated Metals*, 858 F.2d at 678 (citing *Compagnie De Navigation Fraissinet & Cyprien Fabre, S.A. v. Mondial United Corp.*, 316 F.2d 163, 169 (5th Cir. 1963)).

> [T]he carrier remains liable if it fails to provide, without excuse, sufficient ventilation, or its improper stowage contributes to the sweat, or if it is otherwise negligent in handling the cargo. Sweat, then, can be regarded a peril of the sea only when all available precautions are taken to avoid it.

*Wessels v. The Asturias*, 126 F.2d 999, 1000 (2nd Cir. 1942). *Accord General Foods Corp. v. United States*, 104 F. Supp. 629, 631 (S.D.N.Y. 1952) (imposing liability on carrier for sweat damage to shipment of cocoa beans for failure to properly ventilate cargo); *Compagnie De Navigation*, 316 F.2d at 169 (5th Cir. 1963) (carrier absolved from liability only upon a showing that despite prompt, prudent, timely and adequate ventilation and protective measures, sweating nonetheless occurred from inescapable conditions of ocean carriage).

Captain Jolly's (MSC's survyeor) reference to the flower seeds' "inherent moisture" and suggestion that such seeds have a tendency to sweat (Will Aff. Exh. 5 at page 5) is pure speculation and completely unsupported by the record. As such, it should be disregarded. *See Associated Metals*, 858 F.2d at 678 (surveyor's opinion that rust damage was caused by sweating apparently ignored by court); *Copco Steel & Engineering Co. v. S/S Alwaki*, 131 F. Supp. 332, 334 (S.D.N.Y. 1955) (master's testimony on stowage and ventilation unpersuasive since testimony was about general experience rather than specific voyage in issue).

However, assuming *for purposes of this summary judgment motion only* that the flower seeds do have a tendency to sweat as suggested by Captain Jolly, this is insufficient to relieve MSC from liability. "An ocean carrier is required to know the special characteristics of a cargo it accepts for carriage." *Atlantic Banana Co. v. M.V. Calanca,* 342 F. Supp. 447, 451 (S.D.N.Y. 1972), *aff'd,* 489 F.2d 752 (2nd Cir. 1974). *Accord New England Petroleum,* 732 F. Supp. at 1284, where the court found:

> The tendency of No. 6 fuel oil to congeal if not properly heated does not as defendant contends, constitute an inherent vice; it merely requires that the carrier properly care for the Cargo.

*Id.*

The same reasoning applies here. The bill of lading issued by MSC expressly listed the shipment as "648 bags of flower seeds." (Will Aff. ¶ 7 and Will Exh. 3). MSC also knew, as evidenced by Captain Jolly's survey, of the flower seeds' potential to 'sweat.' (Will Aff. Exh. 5 at page 5). *See also General Foods Corp.,* 104 F. Supp. 629 (acknowledging some sweat damage ordinarily incurred during ocean transport of cocoa beans). Thus, any tendency the flower seeds may have to 'sweat' does not constitute an inherent vice of the cargo which would absolve MSC from liability for the resulting water damage. Rather, the seeds' potential tendency to 'sweat' imposed a duty upon MSC to properly care for the cargo, towit, to ensure proper ventilation, particularly in light of the fact the cargo was in the container for "approximately 90 days." (Will Aff. Exh. 5 [Techo Marine Services] at p. 6). *The Vallescura,* 293 U.S. at 306 (carrier liable for failure to properly ventilate shipment of onions); *Siderius, Inc. V. M.V. AMILLA,* 880 F.2d 662, 664 (2nd Cir. 1989) (carrier liable where it could not specifically list or document number of times ships holds were ventilated); *Associated Metals,* 858 F.2d at 678 (noting the only way to prevent sweating of

7

steel during transport from cold to warm climate is through ventilation); *General Foods,* 104 F. Supp. at 632 (carrier liable for failure to ventilate shipment of cocoa beans from Africa to New York).

The record is completely devoid of any evidence that MSC ventilated that cargo at all. (Will Aff. ¶¶ 12, 13 and Will Exhs. 6, 7).[3] In fact, Plaintiff's specific request for ventilation records has been ignored and no such records have been produced to date. (Will Aff. ¶ 13 and Will Exh. 7). As discussed more fully below, this constitutes a breach of MSC's duty to properly care for the cargo, entitling plaintiff to recovery.

### B. MSC FAILED TO EXERCISE DUE DILIGENCE TO MAKE THE VESSEL SEAWORTHY AND PROPERLY CARE FOR THE CARGO OF FLOWER SEEDS.

Under COGSA, a carrier has a duty to properly care for the cargo and to render the vessel seaworthy in connection with that cargo at the start of the voyage. 46 U.S.C. App. ¶ 1303.[4] It is well-

---

[3] During discovery, plaintiff requested the ship's logs which would have reflected any ventilation efforts. MSC did not produce any log books or evidence of ventilation in response to this request. (Will Aff. ¶ 12 and Will Exh. 6 [Response to Plaintiffs' First Set of Requests for Production dated July 21, 2008] at Response No. 18). On July 21, 2008, Plaintiff sent defense counsel a written request specifically requesting the applicable ventilation records. This request has gone unanswered and no ventilation records have been produced to date. (Will Aff. ¶ 13 and Will Exh. 7).

[4] This section expressly provides:

(1) Seaworthiness

The carrier shall be bound, before and at the beginning of the voyage, to exercise due diligence to—
    (a) Make the ship seaworthy;
    (b) Properly man, equip, and supply the ship;
    (c) Make the holds, refrigerating and cooling chambers, and all other parts of the ship in which goods are carried, fit and safe for their reception, carriage, and preservation.

(2) Cargo

The carrier shall properly and carefully load, handle, stow, carry, keep, care for, and discharge the

8

settled that "'[t]he test of seaworthiness is whether the vessel is reasonably fit to carry the cargo which she has undertaken to transport.'" *Spencer Kellogg*, 32 F. Supp. at 530 (quoting *The Sylvia*, 171 U.S. 462, 464 (1898)). When determining the issue seaworthiness, several factors are considered:

> A vessel may be seaworthy for the carriage of stone or coal but unseaworthy for the carriage of grain or other perishable cargoes. She may be seaworthy to carry perishable cargoes in the summer months, but unseaworthy to carry such cargoes in freezing weather. The nature of the cargo, the time of year in which it is to be carried, and the conditions reasonably to be expected at that time of year are factors which enter into the test of seaworthiness.

*Spencer Kellogg*, 32 F. Supp. at 530 (citation omitted).

"[T]he warranty of seaworthiness is a favorite of the admiralty and exceptions to it are narrowly scrutinized." *Metropolitan Coal*, 155 F.2d at 783-84. *Accord Standard Oil Co. (N.J.) v. Anglo-Mexican Petroleum Corp. (The Esso Providence)*, 112 F. Supp. 630, 637 (S.D.N.Y. 1953) (exception of due diligence is strictly construed against carrier warranting seaworthy vessel).

The Supreme Court has held that failure to ventilate the cargo constitutes "want of diligence," thus rendering the carrier liable for resulting damage. *The Vallescura*, 293 U.S. at 306. *Accord Siderius*, 880 F.2d at 664 (lack of evidence regarding ventilation and lack of equipment to measure condensation and humidity levels rendered the ship unseaworthy to carry cargo); *General Foods*, 104 F. Supp. at 632 (failure to ventilate is a failure to care for cargo and not a matter of ship's management) (citing *Philippine Sugar Centrals Agency v. Kokusai Kisen Kabushiki Kaisha*, 106 F.2d 32, 36 (2nd Cir. 1939)).

---

goods carried.

Thus, because MSC failed to properly ventilate the cargo, particularly in light of the fact the cargo was in its possession for "approximately 90 days," (Will Aff. Exh. 5 [Techno Marine Services Survey] at p. 6), MSC cannot establish it exercised due diligence to make the vessel seaworthy with respect to the proper care of the flower seeds. Summary judgment is, therefore, warranted.

## POINT III.

### SUMMARY JUDGMENT IS WARRANTED BECAUSE THERE ARE NO GENUINE ISSUES OF MATERIAL FACT.

A motion for summary judgment is properly granted when

> The pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). *Accord Celotex Corp v. Catrett,* 477 U.S. 317, 322 (1986); *Caterpillar, Inc. v. M/V Karonga,* 2008 A.M.C. 1128, 1132 (S.D.N.Y. 2008).

Here, the material and dispositive facts are undisputed. The cargo was delivered to MSC "CLEAN ON BOARD." (Will Aff. Exh. 3). Surveyors for both Plaintiff and MSC agree that the flower seeds sustained water damage during transit. (Will Aff. Exhs. 4 & 5). Since the record is devoid of any evidence that MSC ventilated the cargo (Will Aff. ¶12 and Will Exh. 6), MSC cannot claim an exception to liability or establish that it exercised due diligence to render the vessel seaworthy or properly care for the cargo. *The Vallescura,* 293 U.S. 296; *Siderius,* 880 F.2d at 664; *Associated Metals,* 858 F.2d 674; *Wessels,* 126 F.2d 999; *General Foods,* 104 F. Supp. 629. Plaintiff's motion for summary judgment, should, therefore, be granted.

## CONCLUSION

For all the foregoing reasons, Plaintiff LIBERTY MUTUAL GROUP, INC., As subrogee of BODGER SEEDS, LTD.'s motion for summary judgment should be GRANTED in its entirety. In addition, this Court should grant such other, further or different relieve as it deems just and proper.

Dated:    Mineola, New York
         August 8, 2008

                                                BADIAK & WILL, LLP
                                                Attorneys for Plaintiff
                                                LIBERTY MUTUAL GROUP, INC.,
                                                As Subrogee of BODGER SEEDS, LTD.

                                                By: _____
                                                ALFRED J. WILL (AW-2485)
                                                106 Third Street
                                                Mineola, New York 11501
                                                (516) 877-2225
                                                Our Ref.: 07-J-011-AW/LS

Index No.: 08 Cv 00223 (JSR)

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK      )
                       )SS.:
COUNTY OF NASSAU       )

**I, Luz M. Webb,** being duly sworn, deposes and says:

I am not a party to the within action, am over 18 years of age and reside c/o Badiak & Will, LLP, 106 3rd Street, Mineola, New York 11501-4404. On August 11, 2008 I served the within PLAINTIFF LIBERTY MUTUAL GROUP, INC., AS SUBROGEE OF BODGER SEEDS, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT MOTION on:

> LYONS & FLOOD, LLP
> Attorneys for Defendant
> Mediterranean Shipping Company, S.A.
> 65 W. 36th Street, 7th Floor
> New York, New York 10018
> (212) 594-2400

by depositing a true copy thereof enclosed in a post-paid wrapper in an official depository under the exclusive care and custody of the United States Postal Service within New York State.

_____
LUZ M. WEBB

Sworn to before me this
11th day of August, 2008

_____
NOTARY PUBLIC