UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
LIBERTY MUTUAL GROUP, INC.,
As subrogee of BODGER SEEDS, LTD.,

                Plaintiff,                          08 CV 00223 (JSR)

     - against -                              **ECF CASE**

MEDITERRANEAN SHIPPING
COMPANY, S.A.,

                Defendant.

-------------------------------------------------------X

**MEMORANDUM OF LAW BY PLAINTIFF
LIBERTY MUTUAL GROUP, INC., AS SUBROGEE OF
BODGER SEEDS, LTD., IN OPPOSITION TO DEFENDANT
MEDITERRANEAN SHIPPING COMPANY, S.A.'S MOTION
FOR SUMMARY JUDGMENT**

**ALFRED J. WILL**
**LISA A. SCOGNAMILLO**
     **Of Counsel**

## TABLE OF CONTENTS

**PAGE**

Table of Cases Cited..................................................................... ii, iii

Table of Statutes Cited................................................................ iii

Preliminary Statement................................................................. 1

Facts............................................................................................. 1

POINT I

DEFENDANT HAS FAILED TO PROVE THAT THE DAMAGE
TO THE CARGO WAS CAUSED BY A PERIL OF THE SEA,
NAMELY SWEAT OR THAT SUCH DAMAGE WAS UN-
AVOIDABLE................................................................................. 4

A.) Captain Jolly's Affidavit is Contradicted by His Own Survey
and is Not Based Upon Personal Knowledge............................... 5

B.) MSC Has Not Established That Any Sweat Was "Unavoidable"....... 7

POINT II

MSC WAS REQUIRED TO KNOW THE SPECIAL
CHARACTERISTICS OF THE FLOWER SEEDS.................................. 9

POINT III

MSC FAILED TO EXERCISE DUE DILIGENCE TO MAKE
THE VESSEL SEAWORTHY AND PROPERLY CARE FOR THE
CARGO OF FLOWER SEEDS............................................................ 11

A. MSC's Failure to Ventilate Evidences Lack of Due Diligence........... 11

B. The Lengthy Voyage and Numerous Ports of Call Evidences
a Lack of Due Diligence.............................................................. 13

Conclusion.................................................................................... 15

i

## TABLE OF AUTHORITIES

**PAGE**

**Cases**

Atlantic Banana Co. v. M.V. Calanca, 342 F.Supp. 447
(S.D.N.Y. 1972), aff'd. 489 F.2d 752)........................................... 9

Atlantic Mutual Ins. Co., Inc. v. CSX Lines, 432 F.3d 428
(2d Cir. 2005)................................................................ 4,

Associated Metals and Minerals Corp. v. Etelae Suomin Lavia,
858 F.2d 674 (11th Cir. 1988).
.................................................... 4, 6, 7, 10

California Packing Corp. v. The Empire State, 180 F.Supp.
19  (N.D. Cal. 1960)........................................................ 5, 9, 13, 14

Compagnie De Navigation Fraissinet & Cyprien Fabre, S.A. v.
Mondial United Corp., 316 F.2d 163 (5th Cir. 1963)................... 8

General Foods Corp. v. United States, 104 F.Supp. 629
(S.D.N.Y. 1952)........................................................... 8, 10, 12

Metropolitan Coal Co. v. Howard, 155 F.2d 780 (2nd Cir. 1946)............... 5, 12

New England Petroleum Co. v. O.T. Shipping Ltd. of London,
732 F.Supp. 1276 (S.D.N.Y. 1990)........................................ 9

Philippine Sugar Centrals Agency v. Kokusai Kisen Kabushiki
Kaisha, 106 F.2d 32  (2nd Cir. 1939)...................................... 12

Roman Crest Foods, Inc. v. S.S. Delta Columbia ex S.S.
Santa Clara, 574 F.Supp. 440 (S.D.N.Y. 1983).......................... 8

Schnell v. The Vallescura, 293 U.S. 296 (1934)........................ 5, 10, 12

Siderius, Inc. v. M.V. AMILLA, 880 F.d 662 (2nd Cir. 1989)............ 10, 12

Spencer Kellogg & Sons v. Great Lakes Transit Corp.,
32 F.Supp. 520 (E.D. Mich. 1940)......................................... 4, 11, 12, 14

Standard Brands, Inc. v. Thos. & JNO. Brocklebank, Ltd., 81 F.Supp.
670 (S.D.N.Y. 1948)................................................................    5, 13

Standard Oil Co. (N.J.) v. Anglo-Mexican Petroleum Corp.
(The Esso Providence), 112 F.Supp. 630 (S.D.N.Y. 1953).....................    12

The Sylvia, 171 U.S. 462 (1898)...............................................    11-12

David R. Webb Company, Inc. v. M/V HENRIQUE LEAL,
733 F.Supp. 702 (S.D.N.Y. 1990)..............................................    4, 6, 7, 8, 9

Wessels v. The Asturias, 126 F.2d 999 (2nd Cir. 1942)..........................    8

**Statues**

46 U.S.C. App. ¶1303............................................................    11

Fed R. Civ. P. 56(e)............................................................    6, 9

**PRELIMINARY STATEMENT**

This is a subrogated cargo claim for damage to a shipment of flowers seeds transported from Tanga, Tanzania to Long Beach, California in or about January 26, 2007 and delivered to the consignee in or about April 10, 2007. The shipment sustained water damage during ocean transit and the carrier failed to properly ventilate the cargo. Defendant Mediterranean Shipping Company, S.A., moves for summary judgment. Plaintiff submits this memorandum of law in opposition to Defendant's motion.[1]

**FACTS**

In or about January 2007, Maua Arusha Ltd. ("Maua") exported a shipment of flower seeds from Tanga, Tanzania to Long Beach, California with an invoice value of $63,688.13. (Will Opp. Aff. ¶ 3and Will Opp. Exh. 1).[2] Environmental Seed Producers ("ESP") was the consignee and Bodger Seeds Ltd., Plaintiff's subrogor, the importer of record. (Will Opp. Exh. 1).

Defendant Mediterranean Shipping Company, S.A. ("MSC") issued bill of lading number MSCUTA011430 for this shipment dated January 26, 2007. (Will Opp. Aff. ¶ 4 and Will Opp. Exh. 2). The bill of lading listed the shipment as "648 bags of flower seeds" in container number MSCU1550902 with seal number 1760518 ("Shipment"). (Will Opp. Aff. ¶ 7 and Will Opp. Exh. 2). The bill of lading expressly states that the seal on the container was the *carrier's* seal. (Will Opp. Aff. ¶ 7 and Will Opp. Exh. 2). The bill of lading also noted that the cargo was received "CLEAN ON BOARD." (Will Opp. Aff. ¶ 5 and Will Opp. Exh. 2). The two vessels indicated in

---

[1] Plaintiff has also moved for summary judgment. Plaintiff's moving papers were served and filed on August 11, 2008 in accordance with this Court's Individual Rules and the Civil Case Management Plan applicable to this action.

[2] "Will Opp. Aff. ¶ __" refers to the numbered paragraphs contained in the Affidavit in Opposition to MSC's Motion for Sumamry Judgment of Alfred J. Will sworn to on August 18, 2008. "Will Opp. Exh. __" refers to the numbered exhibits annexed to the Will Opp. Aff.

the bill of lading were ROYAL ZANZIBAR and ILONA. (Will Opp. Aff. ¶ 6 and Will Opp. Exh. 2). The container appeared to be loaded aboard the ROYAL ZANZIBAR in Tanga, Tanzania and transloaded aboard the ILONA at a subsequent unknown time. (Will Opp. Aff. ¶ 8 and Will Opp. Exh. 3 [Berry Survey][3] at page 3).

Plaintiff was unaware that the subject container was carried aboard the M/V MSC NAMIBIA or M/V MSC SILVANA or that the subject container was carried to the ports of Dar es Salaam, Tanzania, Jeddah, Saudu Arabia, or Ningbo, China before being ultimately delivered to Long Beach, California as agreed in the applicable bill of lading. (Will Opp. Aff. ¶ 9).[4]

In or about April, 10, 2007, the Shipment was received by ESP, the consignee, with water damage sustained during transit. (Will Opp. Aff. ¶ 11 and Will Opp. Exh. 3 [Berri Survey] at pages

---

[3] "Berri Survey" refers to the survey of the subject cargo performed by Dennis Berri of Vericlaim, , Plaintiff's surveyor. The Berri Survey is annexed as Exhibit 3 to the Will Opp. Aff.

[4] The Affirmation of Stefaan Deconinck In Suport of Motion for Summary Judgment executed on August 7, 2008 ("Deconinck Aff.") submitted by MSC alleges at paragraph 6:

> The container traveled from Tanga to Long Beach on four different vessels: the M/V MSC ROYAL ZANZIBAR from Tanga, Tanzania to Dar es Salaam, Tanzania; the M/V MSC NAMIBIA from Dar es Salaam to Jeddah, Saudi Arabia; the M/V MSC SILVANA from Jeddah Saudi Arabia to Ningbo, China; and the M/V MSC ILONA from Ningbo, China to Long Beach, California. The container was stowed both below deck and on deck over the course of the approximately seventy-five (75) days it was aboard these vessels.

These facts were unknown to Plaintiff's subrogor. (Will Opp. Aff. ¶ 9).

1, 5-6, 7; and Berri Aff.[5] Exh. 1 [Jolly Survey][6] at pages 3, 4, 5, 6). Thus, the flower seeds remained in the container for a period of not less than 75 days. (Berri Aff. Exh. 1 [Jolly Survey ] at page 6 stating "the shipment was in the container for approximately 90 days."). This voyage was unusually long for an organic cargo such as the flower seeds. (Berri Aff. 12). Organic cargoes, such as the flower seeds here, are usually delivered within a relatively short period of time and only transported over a period of a few weeks, at most. (Berri Aff. ¶ 12).

A joint survey on behalf of plaintiff and MSC was attended on April 17, 2007. (Berri Aff. ¶ 2 and Berri Exh. 1 [Jolly Survey] at 3). Both plaintiff's surveyor, Dennis Berri of Vericlaim, and MSC's surveyor, Captain Arun K. Jolly of Techo Marine Services, concluded that the cargo sustained water damage during transit. (Will Opp. Exh. 3 [Berri Survey] at page 7 and Berri Exh. 1 [Jolly Survey] at page 5). A total of 636 bags of flower seeds was damaged, leaving only 12 bags sound. (Will Opp. ¶ 18 and Will Opp. Exh. 3 [Berri Survey] at page 8).

To date, neither log books nor ventilation records for any of the vessels involved in transporting the subject container have been produced although duly demanded. (Will Opp. Aff. ¶¶ 12, 13 and Will Opp. Exhs. 5, 6).

---

[5]"Berri Aff. ¶ __" refers to the numbered paragraphs contained in the Affidavit of Dennis Berri sworn to on August 14, 2008. The Berri Aff. is annexed as Exhibit 4 to the Will Opp. Aff.

[6]"Jolly Survey" refers to the survey of the subject cargo performed by Captain Arun K.Jolly of Techno Marine Services, MSC's surveyor.

## POINT I.

## DEFENDANT HAS FAILED TO PROVE THAT THE DAMAGE TO THE CARGO WAS CAUSED BY A PERIL OF THE SEA, NAMELY SWEAT OR THAT SUCH DAMAGE WAS UNAVOIDABLE.

Defendant admits that Plaintiff has established a *prima facie* case for cargo damage under the United States Carriage of the Goods by Sea Act ("COGSA"). (Defendant Memo at 3).[7]  The burden then is on MSC to prove that the loss was not the result of its negligence or that it qualifies for one of the statutory immunities listed in COGSA. *Atlantic Mutual Ins. Co. Inc. v. CSX Lines,* 432 F.3d 428, 433 (2nd Cir. 2005); *Associated Metals and Minerals Corp. v. Etelae Suomin Lavia,* 858 F.2d 674, 677 (11th Cir. 1988); *David R. Webb Company, Inc. v. M/V HENRIQUE LEAL,* 733 F. Supp. 702, 707 (S.D.N.Y. 1990).  In other words, the burden of explaining what happened is on the carrier. *Spencer Kellogg & Sons v. Great Lakes Transit Corp.,* 32 F. Supp. 520, 529 (E.D. Mich. 1940).

The rationale for this rule is a practical one and is based upon fairness and logic – that the carrier is the party which is in the unique position of knowing what happened.  As the United States Supreme Court so aptly stated in a leading case:

> The reason for the rule is apparent. [The carrier] is a bailee intrusted
> with the shipper's goods, with respect to the care and safe delivery of
> which the law imposes upon him an extraordinary duty.  Discharge of
> the duty is peculiarly within his control.  All the facts and circumstances
> upon which he may rely to relieve him of that duty are peculiarly within
> his knowledge and usually unknown to the shipper.  In consequence,
> the law casts upon him the burden of the loss which he cannot explain
> or, explaining, bring within the exceptional case in which he is relieved

---

[7]"Defendant Memo at ___" refers to the page numbers in the Memorandum of Law of Defendant Mediterranean Shipping Company, S.A. In Support of Its Motion For Summary Judgment dated August 8, 2008.

from liability.

*Schnell v. The Vallescura,* 293 U.S. 296, 303 (1934). *Accord Metropolitan Coal Co. v. Howard,* 155 F.2d 780, 784 (2nd Cir. 1946) (L. Hand, J.) (carrier "has access to all the facts relating to what diligence he has in fact used, and the shipper has none").

Defendant argues it is exonerated from liability based upon COGSA's 'peril of the sea' exception, arguing 'sweat' constitutes such a peril. (Defendant Memo at 3). Defendant's argument fails for a complete lack of proof.

### A.) Captain Jolly's Affidavit is Contradicted by His Own Survey and is Not Based Upon Personal Knowledge.

MSC's surveyor, Captain Jolly, alleges that the damage to the subject cargo was the result of moisture in the flower seeds. ((Jolly Aff. ¶¶ 7, 8).[8] It is not clear from Captain Jolly's statements whether his conclusion is based upon a belief there was excessive moisture in the flower seeds or normal sweating associated with organic cargoes. However, neither theory is supported.

Although some sweating is expected with organic cargoes, normal sweating would not have caused the extensive damage sustained by the subject cargo. (Berri Aff. ¶ 10). *See also California Packing Corp. v. The Empire State,* 180 F. Supp. 19, 22 (N.D. Cal. 1960) (carrier failed to demonstrate extraordinary amount of damage incurred was attributable to peril of sweat that would have remained if all reasonable precautions were taken); *Standard Brands, Inc. v. Thos. & JNO. Brocklebank, Ltd.,* 81 F. Supp. 670, 671, 672 (S.D.N.Y. 1948) (acknowledging witness testimony that excessive sweat could have not been produced in only a few days and was caused by lack of ventilation).

---

[8]"Jolly Aff. __ " refers to the numbered paragraphs contained in the Affirmation of Captain Arun Jolly in Support of Motion for Summary Judgment executed on August 7, 2008.

Thus, Captain Jolly must be suggesting that the flower seeds contained excessive moisture which resulted in the extensive wetting of the cargo. (Jolly Aff. ¶¶ 7, 8 and Berri Aff. ¶ 5). However, this suggestion is conclusory, speculative and based, in part, upon hearsay. As such, Captain Jolly's statements should be disregarded. Fed. R. Civ. P. 56(e) (affidavit supporting summary judgment must be based upon personal knowledge); *Webb,* 733 F. Supp. at 707 (expert's unsupported conclusions insufficient to create factual issue). *See also Associated Metals,* 858 F.2d at 678 (surveyor's opinion that rust damage was caused by sweating apparently ignored by court).

A determination that an organic cargo sustained water damage due to excessive moisture within the cargo can be made only after an independent Moisture Content Test confirms this fact. (Berri Aff. ¶¶ 9, 15). The record is devoid of any such testing. (Berri Aff. ¶ 9).

Additionally, Captain Jolly based his conclusion upon a purported examination of the subject container, the pattern of the wetting and placement of the subject cargo within the container. (Jolly Aff. ¶¶ 6, 7, 8). However, as evidenced by Captain Jolly's own survey report (which is conspicuously absent from MSC's submission), *Captain Jolly has no personal knowledge of any of these facts.* (Berri Aff. ¶¶ 6, 17, 18 and Berri Exh. 1 [Jolly Survey] at pages 2, 3, 4, 5).

Captain Jolly examined the subject cargo several days *after* it was removed from the container. (Berri Exh. 1 [Jolly Survey] at pages 3-4 and Berri ¶¶ 6,7). Therefore, since Captain Jolly *never* examined the subject cargo while it was still in the container, he has no personal knowledge of the actual placement of the wet bags of flower seeds within that container.

Likewise, Captain Jolly has no personal knowledge of the condition of the interior of the container. Captain Jolly's own survey indicated that he did not examine the container until several days later, *after* it had left the consignee's warehouse and *after* the container had been loaded with

6

a subsequent unrelated cargo *and the container sealed.* (Berri ¶¶ 6, 7 and Berri Exh. 1 [Jolly Survey] at 2).

Captain Jolly also claims that he "inspected the subject container and found its condition to be satisfactory." (Jolly Aff. ¶ 6). This allegation is misleading. A review of Captain Jolly's survey (Berri Exh. 1 [Jolly Survey] at page 3) reveals that his examination of the subject container was incomplete: "The container was found to be in satisfactory condition *as from what could be seen.* We were only able to inspect the door panels, the front panels and right side panels. (Berri Exh. 1 [Jolly Survey] at 3) (emphasis added). The photographs attached to Captain Jolly's survey confirm that a complete examination of the subject container was impossible because there were several other containers stacked on top of and next to the subject container, thus preventing an examination of the roof and one side of that container. (Berri Exh. 1 [Jolly Survey Photos] and Berri Aff. ¶¶ 4, 18, 19).

Because Captain Jolly's Affidavit is unreliable, conclusory and not based upon personal knowledge, it is insufficient to support summary judgment. Fed. R. Civ. P. 56(e); *Associated Metals,* 858 F.2d at 678; *Webb,* 733 F. Supp. at 707. MSC's motion for summary judgment should, therefore, be denied.

### B. MSC Has Not Established That Any Sweat Was 'Unavoidable.'

It is common knowledge in the maritime industry that proper ventilation will avoid sweat/condensation damage to cargo. *See Associated Metals,* 858 F.2d at 678 (noting only way to prevent sweating of steel during transport from cold to warm climate is through ventilation).

In order for a carrier to avoid liability on the basis that 'sweating' is a peril of the sea within the meaning of COGSA, "the carrier bears the burden of proving that sweating was unavoidable despite all reasonable efforts to avoid it by ventilation or otherwise." *Associated Metals,* 858 F.2d

7

at 678 (citing *Compagnie De Navigation Fraissinet & Cyprien Fabre, S.A. v. Mondial United Corp.*, 316 F.2d 163, 169 (5th Cir. 1963)).

> [T]he carrier remains liable if it fails to provide, without excuse, sufficient
> ventilation, or its improper stowage contributes to the sweat, or if it is
> otherwise negligent in handling the cargo.  Sweat, then, can be regard-
> ed a peril of the sea only when all available precautions are taken to
> avoid it.

*Wessels v. The Asturias*, 126 F.2d 999, 1000 (2nd Cir. 1942).  *Accord General Foods Corp. v. United States*, 104 F. Supp. 629, 631 (S.D.N.Y. 1952) (imposing liability on carrier for sweat damage to shipment of cocoa beans for failure to properly ventilate cargo); *Compagnie De Navigation*, 316 F.2d at 169 (5th Cir. 1963) (carrier absolved from liability only upon a showing that despite prompt, prudent, timely and adequate ventilation and protective measures, sweating nonetheless occurred from inescapable conditions of ocean carriage).

It is interesting to note that Captain Jolly, MSC's surveyor, does not even allege in his affirmation that the sweating was unavoidable or recite a single precaution that was taken to avoid sweating.

In *Webb*, 733 F. Supp. at 707, this Court rejected the carrier's defense, as asserted here, that the damage was caused by 'unavoidable condensation.'  Judge Sand contrasted the case before him with that of *Roman Crest Foods, Inc. V. S.S. Delta Columbia ex S.S. Santa Clara*, 574 F. Supp. 440, 442 (S.D.N.Y. 1983), noting:

> The carrier [in *Roman Crest*] offered as evidence the testimony of the
> ship's personnel and documentation establishing proper storage of
> the fruit, the actual pulp temperatures throughout the voyage and
> at the time of unloading, and the testimony of an expert that the
> temperatures were proper and that the fruit was probably damaged
> because it was the first fruit of the season.  *Id.*  Here, in contrast,
> defendant and its expert offer only conclusions and do not present

8

enough evidence to create a factual issue.

*Webb,* 733 F. Supp. at 707. Judge Sand's reasoning applies here. MSC has not offered the testimony of a single crew member of any of the four (4) ships upon which the subject container was carried during its 75 day journey to attest to the conditions under which the subject container was carried, or that any precautions were taken with respect to the subject organic cargo.[9] Nor has MSC produced log books or ventilation records for any of the vessels upon which the subject container was carried, although duly demanded. (Will Opp. Aff. ¶¶ 12, 13 and Will Opp. Exhs. 5, 6). Summary judgment should, therefore, be denied. *The Empire State,* 180 F. Supp. at 22-23 (when there is evidence of carrier's negligence adequate to explain loss and no substantial evidence to rebut shipper's *prima facie* showing of good order and condition, shipper need go no further).

## POINT II.

## MSC WAS REQUIRED TO KNOW THE SPECIAL CHARACTERISTICS OF THE FLOWER SEEDS.

"An ocean carrier is required to know the special characteristics of a cargo it accepts for carriage." *Atlantic Banana Co. v. M.V. Calanca,* 342 F. Supp. 447, 451 (S.D.N.Y. 1972), *aff'd,* 489 F.2d 752 (2nd Cir. 1974). *Accord New England Petroleum Co. v. O.T. Shipping Ltd. of London,* 732 F. Supp. 1276, 1284 (S.D.N.Y. 1990) where the court found:

> The tendency of No. 6 fuel oil to congeal if not properly heated does not as defendant contends, constitute an inherent vice; it merely requires that the carrier properly care for the Cargo.

---

[9]MSC also submitted the Deconinck Aff. Mr. Deconinck represents, at paragraph 1, that he is the "Regional Claims Manager for North America." He has no personal knowledge of either the actual conditions under which the container was carried or any care that may have been taken with respect to the subject organic cargo. As such, Mr. Deconinck's Affirmation is worthless and should be disregarded. Fed. R. Civ. P. 56(e).

9

*Id.*

The same reasoning applies here. The bill of lading issued by MSC expressly listed the shipment as "648 bags of flower seeds," an organic cargo. ("Deconinck Aff. Exh. A and Berri Aff. ¶¶ 10, 12 ). MSC also knew, as evidenced by Captain Jolly's survey, of the flower seeds' potential to 'sweat.' (Berri Exh. 1 [Jolly Survey] at page 5; Jolly Aff. ¶ 8; Berri Aff. ¶ 10 ). *See also General Foods Corp.,* 104 F. Supp. at 629 (acknowledging some sweat damage ordinarily incurred during ocean transport of cocoa beans). Thus, any tendency the flower seeds may have to 'sweat' does not constitute an inherent vice of the cargo which would absolve MSC from liability for the resulting water damage. Rather, the seeds' potential tendency to 'sweat' imposed a duty upon MSC to properly care for the cargo, towit, to ensure proper ventilation, particularly in light of the fact the cargo was in the container for "approximately 90 days." (Berri Exh. 1 [Jolly Survey] at p. 6). *The Vallescura,* 293 U.S. at 306 (carrier liable for failure to properly ventilate shipment of onions); *Siderius, Inc. V. M.V. AMILLA,* 880 F.2d 662, 664 (2nd Cir. 1989) (carrier liable where it could not specifically list or document number of times ships holds were ventilated); *Associated Metals,* 858 F.2d at 678 (noting only way to prevent sweating of steel during transport from cold to warm climate is through ventilation); *General Foods,* 104 F. Supp. at 632 (carrier liable for failure to ventilate shipment of cocoa beans from Africa to New York).

The record is completely devoid of any evidence that MSC ventilated the subject cargo or took any precautions at all with respect to this organic cargo. (Will Opp. Aff. ¶¶ 12, 13 and Will Opp. Exhs. 5, 6).[10] In fact, Plaintiff 's specific request for ventilation records has been ignored and

---

[10]During discovery, plaintiff requested the ship's logs which would have reflected any ventilation efforts. MSC did not produce any log books or evidence of ventilation in response to this request. (Will Opp. Aff. ¶ 12 and Will Opp. Exh. 5 [Response to Plaintiffs' First Set of Requests

no such records have been produced to date.  (Will Opp. Aff. ¶ 13 and Will Opp. Exh. 6).  As

discussed more fully below, this constitutes a breach of MSC's duty to properly care for the cargo,

thus entitling Plaintiff to recovery.

### POINT III.

### MSC FAILED TO EXERCISE DUE DILIGENCE TO MAKE THE VESSEL SEAWORTHY AND PROPERLY CARE FOR THE CARGO OF FLOWER SEEDS.

#### A. MSC'S Failure to Ventilate Evidences Lack of Due Diligence.

Under COGSA, a carrier has a duty to properly care for the cargo and to render the vessel

seaworthy in connection with that cargo at the start of the voyage. 46 U.S.C. App. ¶ 1303.[11]  It is

well-settled that "'[t]he test of seaworthiness is whether the vessel is reasonably fit to carry the cargo

which she has undertaken to transport.'" *Spencer Kellogg,* 32 F. Supp. at 530 (quoting *The Sylvia,*

---

for Production dated July 21, 2008] at Response No. 18).  On July 21, 2008, Plaintiff sent defense counsel a written request specifically requesting the applicable ventilation records.  This request has gone unanswered and no ventilation records have been produced to date.  (Will Opp. Aff. ¶ 13 and Will Opp. Exh. 6).

[11]This section expressly provides:

(1) Seaworthiness

The carrier shall be bound, before and at the beginning of the voyage, to exercise due diligence to—

    (a) Make the ship seaworthy;

    (b) Properly man, equip, and supply the ship;

    (c) Make the holds, refrigerating and cooling chambers, and all other parts of the ship in which goods are carried, fit and safe for their reception, carriage, and preservation.

(2) Cargo

The carrier shall properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried.

171 U.S. 462, 464 (1898)). When determining the issue seaworthiness, several factors are considered:

> A vessel may be seaworthy for the carriage of stone or coal but unseaworthy for the carriage of grain or other perishable cargoes. She may be seaworthy to carry perishable cargoes in the summer months, but unseaworthy to carry such cargoes in freezing weather. The nature of the cargo, the time of year in which it is to be carried, and the conditions reasonably to be expected at that time of year are factors which enter into the test of seaworthiness.

*Spencer Kellogg,* 32 F. Supp. at 530 (citation omitted).

"[T]he warranty of seaworthiness is a favorite of the admiralty and exceptions to it are narrowly scrutinized." *Metropolitan Coal,* 155 F.2d at 783-84. *Accord Standard Oil Co. (N.J.) v. Anglo-Mexican Petroleum Corp. (The Esso Providence),* 112 F. Supp. 630, 637 (S.D.N.Y. 1953) (exception of due diligence is strictly construed against carrier warranting seaworthy vessel).

The Supreme Court has held that failure to ventilate the cargo constitutes "want of diligence," thus rendering the carrier liable for resulting damage. *The Vallescura,* 293 U.S. at 306. *Accord Siderius,* 880 F.2d at 664 (lack of evidence regarding ventilation and lack of equipment to measure condensation and humidity levels rendered the ship unseaworthy to carry cargo); *General Foods,* 104 F. Supp. at 632 (failure to ventilate is a failure to care for cargo and not a matter of ship's management) (citing *Philippine Sugar Centrals Agency v. Kokusai Kisen Kabushiki Kaisha,* 106 F.2d 32, 36 (2nd Cir. 1939)).

Thus, because MSC failed to properly ventilate the oganic cargo, particularly during the unusually long voyage of "approximately 90 days," (Berri Exh. 1 [Jolly Survey] at p. 6; Berri Aff. ¶ 12), MSC cannot establish it exercised due diligence to make the vessel seaworthy with respect to the proper care of the subject organic cargo. Summary judgment is therefore appropriate.

## B. The Lengthy Voyage and Numerous Ports of Call Evidences a Lack of Due Diligence.

Organic cargoes, such as a shipment of flower seeds involved here, are usually delivered within a relatively short period of time, a few weeks at most. (Berri Aff. ¶ 12). Here, the cargo remained in the container for an unusually long period of time of "approximately 90 days." (Berri Exh. 1 [Jolly Survey] at page 6).

Additionally, unbeknownst to the consignee (Will Opp. Aff. 9), the subject container was transloaded aboard four (4) different vessels during the voyage and stopped at two ports in Tanzania, one in Saudi Arabia and one in China before ultimately being delivered in Long Beach, California as contracted for in the applicable bill of lading. (Deconinck Aff. ¶ 6 and Exhibit A [bill of lading] annexed thereto).

Normal or expected sweating of the flower seeds would not have caused the excessive wetting to the subject cargo experienced here. (Berri Aff. ¶ 10). *See also The Empire State*, 180 F. Supp. at 22 (carrier failed to demonstrate extraordinary amount of damage incurred was attributable to peril of sweat that would have remained if all reasonable precautions were taken); *Standard Brands*, 81 F. Supp. at 671, 672 (excessive sweat caused by lack of ventilation).

Given 1) the number of times the container was transloaded (4); 2) the container's different storage locations and conditions on each of the four (4) vessels; 3) the many different ports of call the container entered; 4) and the unusually long 75 day journey, it is likely that the flower seeds here were subject to many changes in temperature, weather, humidity levels, storage conditions and other atmospheric and environmental factors, any one or all or a combination of which could have caused the resulting excessive damage to the subject cargo. (Berri Aff. ¶ 13). The resulting damage could

13

have been avoided if MSC took proper care of the cargo and utilized sufficient ventilation. (Berri Aff. ¶ 14).

MSC acknowledges that all vessels involved with the subject shipment encountered normal conditions expected for a winter voyage. Defendant's Memo at 4, 6. Encountering expected conditions does "not normally result in sweat damage of this magnitude." *The Empire State*, 180 F. Supp. at 22.

> "Intercoastal voyages in the winter time are inordinarily hazardous operations with respect to the safety of the cargo and impose heavy responsibilities upon the carrier. In a situation fraught with the possibility of small errors causing large amounts of damage, [the carrier]-if it is to escape liability for the heavy damage which in fact ensued-must come forth with a clear and convincing demonstration that it is blameless.

*Id.* at 21.

MSC's failure to take into account the nature of the cargo, the time of year and length of time carried, and the conditions reasonably to be expected renders the vessels not fit to cargo the flower seeds and, thus, unseaworthy. *Spencer Kellogg,* 32 F. Supp. at 530. Summary judgment should, therefore, be denied.

Again, the record is completely devoid of *any* evidence whatsoever that MSC properly ventilated or otherwise properly cared for the cargo. MSC has not submitted *any* evidence or statement by a crew member aboard any of the four (4) vessels upon which the cargo was allegedly carried attesting to the proper ventilation or care of the cargo. There are no statements from the master, chief mates or any crew members with personal knowledge of the transport or care of the cargo during the 75 days it was in MSC's possession. Also significant is the lack of any log books or ventilation records for any of the vessels, although duly demanded (Will Opp. Aff. ¶¶ 12, 13 and

14

Will Opp. Exhs. 5, 6), which would contain evidence of the MSC's care of the cargo while in its possession.

## CONCLUSION

For all the foregoing reasons, Mediterranean Shipping Company, S.A.'s motion for summary judgment should be DENIED, and Plaintiff LIBERTY MUTUAL GROUP, INC., As subrogee of BODGER SEEDS, LTD., should be granted such other, further or different relief as this Honorable Court deems just and proper.

Dated:        Mineola, New York
              August 18, 2008

                                      BADIAK & WILL, LLP
                                      Attorneys for Plaintiff
                                      LIBERTY MUTUAL GROUP, INC.,
                                      As Subrogee of BODGER SEEDS, LTD.

                                      By:_____
                                             ALFRED J. WILL (AW-2485)
                                             106 Third Street
                                             Mineola, New York 11501
                                             (516) 877-2225
                                             Our Ref.: 07-J-011-AW/LS

Index No.: 062429CV2007

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK     )
                           )SS.:
COUNTY OF NASSAU      )

**I, Luz M. Webb,** being duly sworn, deposes and says:

I am not a party to the within action, am over 18 years of age and reside c/o Badiak & Will, LLP, 106 3rd Street, Mineola, New York 11501-4404.  On August 18, 2008  I served the within MEMORANDUM OF LAW BY PLAINTIFF LIBERTY MUTUAL GROUP, INC., AS SUBROGEE OF BODGER SEEDS, LTD., IN OPPOSITION TO DEFENDANT MEDITERRANEAN SHIPPING COMPANY, S.A.'S MOTION FOR SUMMARY JUDGMENT on:

> Attn: Edward Flood, Esq.
> Lyons & Flood, LLP
> Attorneys for Defendant - MEDITERRANEAN SHIPPING COMPANY, S.A.
> 65 W. 36th Street, 7th Floor
> New York, New York 10018

by depositing a true copy thereof enclosed in a post-paid wrapper in an official depository under the exclusive care and custody of the United States Postal Service within New York State.

_____
LUZ M. WEBB

Sworn to before me this
18th day of August, 2008

_____
NOTARY PUBLIC

LISA A. SCOGNAMILLO
Notary Public, State of New York
No. 5011463
Qualified in Nassau County
Commission Expires Apr 19, 2011