UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LIBERTY MUTUAL GROUP INC.  :
as subrogee of BODGER SEEDS, LTD., :
 : 08 Civ. 00223 (JSR)
            Plaintiff, :
 :
    - against - :
 :
MEDITERRANEAN SHIPPING COMPANY, S.A. : Before:
 : Hon. Jed S. Rakoff
            Defendant. :
------------------------------------------------------------------------X

**MEMORANDUM OF LAW OF DEFENDANT
MEDITERRANEAN SHIPPING COMPANY, S.A. IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN
FURTHERANCE OF ITS OWN MOTION FOR SUMMARY JUDGMENT**

LYONS & FLOOD, LLP
Attorneys for Defendant
MEDITERRANEAN SHIPPING
COMPANY, S.A.
65 West 36th Street, 7th Floor
New York, New York 10018
(212) 594-2400

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES…………………………………………………………. ii

ARGUMENT…………………………………………………………………………..1

    POINT I     PLAINTIFF HAS FAILED TO PROVE GOOD CONDITION ON DELIVERY AS A MATTER OF LAW……………………………………………………1

    POINT II    THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO THE CAUSE OF THE CARGO DAMAGE…………..3

    POINT III   MSC PROPERLY CARED FOR SHIPPER'S CARGO………5

    POINT IV   ADDITIONAL DEFENSES WHICH REQUIRE A FINDING OF SUMMARY JUDGMENT IN MSC'S FAVOR……………………………...............................7

        a.    The Cargo Damage was the Result of an Act or Omission by the Shipper for which MSC is not Liable…………………………………….7

        b.    COGSA's "q" Clause Exonerates MSC from Liability……………………………………….8

CONCLUSION……………………………………………………………………….9

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                               **Page(s)**

*Atl. Banana Co. v. M.V. Calanca*, 342 F. Supp. 447 (S.D.N.Y. 1972)………………..5

*Atl. Mut. Ins. Co., Inc. v. CSX Lines*, 432 F.3d 428 (2d Cir. 2005)……………………1

*Associated Metals & Minerals Corp. v. Etelae Suomin Laiva*,
858 F.2d 674 (11th Cir. 1988)……………………………………………………..1, 5

*Aunt Mid, Inc. v. Fjell-Oranje Lines*, 458 F.2d 712 (7th Cir. 1971)…………………..8

*Caemint Food, Inc. v. Brasileiro*, 647 F.2d 347 (2d Cir. 1982)………………………2

*Cigna Ins. Co. of P.R. v. The M/V Skanderborg*, 897 F. Supp. 659
(D.P.R. 1995)………………………………………………………………………..2

*Compagnie de Navigation Fraissinet & Cyprien Fabre, S.A. v. S.S. Allobrogia*,
316 F.2d 163, 167 (5th Cir. 1963)…………………………………………………..5

*Empire Distribs., Inc. v. U.S. Lines, Inc.*, No. CV485-463, 1986 U.S. Dist.
LEXIS 20379 (S.D. Ga. Sept. 15, 1986)……………………………………………7

*Gen. Foods Corp. v. United States*, 104 F. Supp. 629 (S.D.N.Y. 1952)………………3

*Perugina Chocolates & Confections, Inc. v. S/S Ro Ro Genova*, 649 F. Supp.
1235 (S.D.N.Y. 1986)………………………………………………………………2

*PT Indonesia Espon Indus. v. Orient Overseas Container Line, Inc.*,
208 F. Supp. 2d 1334 (S.D. Fla. 2002)……………………………………………..8

*Schnell v. The Vallescura*, 293 U.S. 296, 301 (1934)…………………………………5

*Siderius, Inc. v. M.V. Amilla*, 880 F.2d 662, 663 (2d Cir. 1989)……………………...5

*Wessels v. The Asturias*, 126 F.2d 999 (2d Cir. 1942)………………………………...3

**Statutes**

46 U.S.C.S. § 1304(2)(q)………………………………………………………………8

46 U.S.C.S. § 30706…………………………………………………………………...7

**Treatises**                                                                                                                    **Page(s)**

SCHOENBAUM, THOMAS J., ADMIRALTY AND MARITIME LAW (4th Ed. 2004)………...7

THOMAS, R.E. ET AL., THOMAS' STOWAGE (3rd ed. 1995)…………………………...4, 8

**Law Review Articles**

M. Bayard Crutcher, *The Ocean Bill of Lading – A Study in Fossilization*,
45 TUL. L. REV. 697, 731 (1971)………………………………………………....2

**PRELIMINARY STATEMENT**

Defendant Mediterranean Shipping Company, S.A. ("MSC") submits this Memorandum of Law in response to plaintiff's motion for summary judgment and in furtherance of its own motion for summary judgment.

The central issue in this case is who should bear the responsibility for fresh water sweat damage to cargo when the shipper requested a standard dry container, the shipper loaded, locked, and sealed the container, and cargo underwent a lengthy winter voyage. Contrary to plaintiff's assertions, MSC is not liable under the Carriage of Goods By Sea Act ("COGSA"), and plaintiff must bear the responsibility for this loss.

**ARGUMENT**

**POINT I**

**PLAINTIFF HAS FAILED TO PROVE GOOD CONDITION ON DELIVERY AS A MATTER OF LAW**

Under COGSA, in order to make out a *prima facie* case for cargo damage, a plaintiff must show delivery of the cargo to the carrier in good condition and outturn by the carrier in damaged condition. *Atl. Mut. Ins. Co., Inc. v. CSX Lines*, 432 F.3d 428, 433 (2d Cir. 2005); *Associated Metals & Minerals Corp. v. Etelae Suomin Laiva*, 858 F.2d 674, 677 (11th Cir. 1988). Plaintiff has presented insufficient evidence as to the first prong – delivery in good condition – and for this reason alone, plaintiff's motion for summary judgment should be denied.[1]

Ordinarily, as plaintiff asserts in its motion, "a clean bill of lading creates a presumption of delivery in good condition favorable to the plaintiff." *Atl. Mut.,* 432 F.3d at 433. More is required however when the shipper loaded, locked, and sealed the

---

[1] MSC contends that it is MSC, not plaintiff, that is entitled to summary judgment.

1

container prior to the carrier's receipt, as shipper Maua Arusha Ltd. ("Maua") did here. *See Caemint Food, Inc. v. Brasileiro*, 647 F.2d 347, 352 (2d Cir. 1982) (Friendly, J.) (finding "[a]lthough a clean bill of lading normally constitutes prima facie evidence that cargo was in good condition . . . courts have long recognized that it does not have this probative force where . . . the shipper seeks to recover for damage to goods shipped in packages that would have prevented the carrier from observing [any] damaged condition"); *Perugina Chocolates & Confections, Inc. v. S/S Ro Ro Genova*, 649 F. Supp. 1235, (S.D.N.Y. 1986) (Leisure, J.) (ruling plaintiff had not proven good order on delivery where "[plaintiff] placed the [cargo] in containers that were locked and sealed before delivery to defendant"); *Cigna Ins. Co. of P.R. v. The M/V Skanderborg*, 897 F. Supp. 659, 661 (D.P.R. 1995) (noting "several courts have excused the carrier from liability when it never had the opportunity to inspect the cargo"); *see also* M. Bayard Crutcher, *The Ocean Bill of Lading – A Study in Fossilization*, 45 TUL. L. REV. 697, 731 (1971) (arguing that bills of lading allocate risks to the carrier "in an absurd fashion" and are based on the fiction that "the carrier actually sees and weighs and counts the individual pieces of cargo when they are loaded"). When the carrier has had no opportunity to inspect the cargo loaded inside of the container, the plaintiff cannot solely rely on a clean bill of lading to prove good condition upon delivery.

Other than the bill of lading, the only evidence submitted by plaintiff to prove good condition on delivery is one sentence in the Affirmation of Angelina Mbaga, an employee of Maua. (Mbaga Aff. ¶ 5). Ms. Mbaga alleges that the seeds were "exported dry" but does not state the bases for this opinion. She never affirms that she was present when the seeds were loaded into the container nor does she verify that she ever

2

personally observed their physical condition. Moreover, no surveys or inspections of the cargo performed by the shipper, or any other party, prior to loading in the dry container have been produced or alleged by plaintiff. MSC respectfully submits that this vague affirmation is insufficient under COGSA to prove that the cargo was in good condition when loaded into the container by Maua.

In short, leaving aside the substantive merit of MSC's COGSA defenses, plaintiff has failed to prove that the cargo was delivered in good condition and accordingly has not presented a *prima facie* case for cargo damage against MSC. Accordingly, plaintiff's motion for summary judgment must be denied.

## POINT II

### THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO THE CAUSE OF THE CARGO DAMAGE

Plaintiff's allegation that MSC's position regarding the cause of the wetting is speculative fails to acknowledge the evidence and case law in support of MSC's conclusion. (Pl.'s Mem. in Supp. of Mot. for Summ. J. 5-6; Def.'s Mem in Supp. of Mot. for Summ. J. 3-5). As noted in decisions cited by plaintiff in its own motion for summary judgment, courts have long held that organic seed-like cargo is likely to sweat condensation over the course of a long ocean voyage, particularly during winter months. *See Wessels v. The Asturias*, 126 F.2d 999, 1000 (2d Cir. 1942) (stating because cocoa beans are "soft and moist . . . loaded in a hot and humid climate . . . [and transported] from the Gulf Stream into cold coastal waters in the course of the voyage," they are "quite likely to sweat" during the winter months); *see also Gen. Foods Corp. v. United States*, 104 F. Supp. 629 (S.D.N.Y. 1952).

Moreover, the pattern of fresh water damage observed in the instant case by both Captain Jolly and plaintiff's surveyor Dennis Berri leaves little doubt that the damage was caused by sweat. No other reasonable conclusion can be drawn from the undisputed fact that the bags wet by fresh water had been pressed against the container's interior sidewalls during shipment. (Jolly Aff. in Resp. to Pl.'s Mot. for Summ. J. ¶¶ 6-7; Will Aff. Ex. 4) (plaintiff's surveyor acknowledges on page six (6) of his report that consignee admitted "the majority of the wet bags were found along the walls of the container and at the rear doors"). Had the water entered the container from outside the container, rather than from within the cargo itself, there would have been a different pattern of damage than that observed by both surveyors. (Jolly Aff. in Resp. to Pl.'s Mot. for Summ. J. ¶¶ 6-7). Additionally, all of the evidence shows that the container was in good condition, diminishing the already minute likelihood of fresh water egress from outside the container. (Jolly Aff. in Resp. to Pl's Mot. for Summ. J ¶¶ 4-5).

Furthermore, it is well known within the maritime community that seeds are likely to release moisture when the temperatures they are exposed to during shipment are not controlled. (Jolly Aff. in Resp. to Pl.'s Mot. for Summ. J ¶ 3); THOMAS, R.E. ET AL., THOMAS' STOWAGE 312 (3rd ed. 1995). Here, shipper elected to load the cargo into a dry container, rather than a refrigerated one, increasing the risk that the cargo would sweat. (Jolly Aff. in Resp. to Pl.'s Mot. for Summ. J. ¶ 9).

The facts are clear. A commodity already susceptible to sweat was shipped in a dry container during the winter months. Following the long ocean voyage, the bags of cargo were found damaged in a pattern consistent with condensation released by the cargo that then accumulated along the container's interior panels. Plaintiff has proffered

no evidence of any contrary explanation, reasonable or otherwise, for the appearance of fresh water inside of the container.

Therefore, there is no genuine issue of material fact regarding the cause of cargo damage.

## POINT III

### MSC PROPERLY CARED FOR PLAINTIFF'S CARGO

Plaintiff argues that MSC has not, and cannot, prove that it made "all reasonable efforts to avoid [the sweat] by ventilation *or otherwise*." *See Associated Metals*, 858 F.2d at 678 (emphasis added). In support of its position, plaintiff relies upon case law and reasoning relevant only to a pre-containerized world. Not one of the decisions cited by plaintiff involves the shipment of containerized cargo, or requires the carrier to ventilate locked and sealed containers aboard a large container vessel. *See Schnell v. The Vallescura*, 293 U.S. 296, 301 (1934) (shipment of onions prior to containerization of cargo); *Siderius, Inc. v. M.V. Amilla*, 880 F.2d 662, 663 (2d Cir. 1989) (shipment of steels rolls inside of "steel envelopes"); *Atl. Banana Co. v. M.V. Calanca*, 342 F. Supp. 447 (S.D.N.Y. 1972) (shipment of boxes and cartons of bananas loaded into vessel's hatches); *Compagnie de Navigation Fraissinet & Cyprien Fabre, S.A. v. S.S. Allobrogia*, 316 F.2d 163, 167 (5th Cir. 1963) (shipment of crates of window glass); *Associated Metals*, 858 F.2d at 676-77 (shipment of steel rolls placed directly in vessel's holds). They are therefore not illustrative of the legal issue currently before this Court.

5

Plaintiff cites the fact that MSC has not produced any ventilation records related to the subject shipment.[2] What plaintiff fails to understand, as evidenced by its reliance on pre-container decisions, is that the custom in the containership industry is to rely on passive ventilation, rather than mechanical ventilation to dissipate the heat that accumulates in the holds of container vessels during ocean transit. (Parani Aff. ¶ 2). Fans are used only when a vessel's crew enters the holds for their daily inspections or for maintenance work. (Parani Aff. ¶ 2). Moreover, the vent flaps in a container vessel's holds are kept shut during periods of inclement weather to prevent egress of seawater. (Parani Aff ¶ 2). Absent an express condition on the cargo manifest, as was the case here, a container vessel's crews do not record when the ventilation flaps are closed. (Parani Aff. ¶ 4 and ¶ 5).

As explained in Point II of defendant's motion for summary judgment, there was nothing more MSC could have done to prevent the sweat damage to the subject cargo. At shipper's request, MSC provided a standard dry shipping container without refrigeration or temperature control. The shipper stuffed, locked, and sealed the container. The container was subsequently transported to its destination without incident aboard four different MSC vessels. On some of the legs of transit, plaintiff's container was carried below deck and subject to the natural ventilation of the vessels' holds. At other times, plaintiff's container was carried on deck and fully exposed to the elements. Absent plaintiff's unsubstantiated claim that MSC failed to adequately ventilate the cargo, plaintiff has not cited to any specific act of negligence or omission on MSC's part which proximately caused the wetting to plaintiff's cargo.

---

[2] Contrary to plaintiff's assertions, plaintiff's letter requesting ventilation records, dated July 21, 2008, is the first time plaintiff made any specific request for ventilation records. (Will Aff. Ex. 7; Flood Aff. in Resp. to Pl.'s Mot. for Summ. J. ¶ 4).

6

Therefore, because MSC properly cared for the subject cargo, plaintiff's motion for summary judgment must be denied.

## POINT IV

### ADDITIONAL DEFENSES WHICH REQUIRE A FINDING OF SUMMARY JUDGMENT IN MSC'S FAVOR

In addition to its sweat defense, and clause seventeen (17) of MSC's bill of lading,[3] MSC asserts two additional defenses that require a finding for summary judgment in its favor.

### a. The Cargo Damage was the Result of an Act or Omission by the Shipper for which MSC is Not Liable.

Under section 30706 of COGSA, a carrier is not liable for acts or omissions by the shipper that result in cargo damage. 46. U.S.C.S. § 30706(b)(7) (2008). The effect of this defense is to "place the risk upon the shipper if he cuts corners on the method of shipment." SCHOENBAUM, THOMAS J., ADMIRALTY AND MARITIME LAW 702-03 (4th Ed. 2004).

In a similar case involving containerized cargo, *Empire Distribs., Inc. v. U.S. Lines, Inc.*, the carrier was found not liable because plaintiff had opted against using a refrigerated ("reefer") container. *Empire Distribs., Inc. v. U.S. Lines, Inc.*, No. CV485-463, 1986 U.S. Dist. LEXIS 20379, at *12-13 (S.D. Ga. Sept. 15, 1986). There, the court stated that plaintiff "was and is free to opt for shipment of its [cargo] by the most inexpensive means possible, but, having done so, it cannot be heard to complaint of breach of duty on the part of the carrier when the shipper's own decision leads substantially to the loss." *Id.*

---

[3] Clause seventeen (17) of MSC's Bill of Lading states that: "[i]f the shipper or his servant stuffs the container, the Merchant shall be responsible for proper stowage and securing of the goods to insure ventilation and to avoid shifting." (Deconinck Aff. in Supp. of Def.'s Mot. for Summ. J. Ex. A).

In a non-containerized case, *Aunt Mid, Inc. v. Fjell-Oranje Lines*, the Seventh Circuit Court of Appeals upheld a finding that a carrier was not liable for damage to a shipment of cabbage where the shipper elected to ship the cargo "in a ventilated hold rather than under refrigeration." *Aunt Mid, Inc. v. Fjell-Oranje Lines*, 458 F.2d 712, 716-17 (7th Cir. 1971). There, the shipper did so in order to save "$1,560.00 in freight rates" and in spite of a warning by the seller that the cargo should be refrigerated. *Id.* (citing district court decision and characterizing shipper's decision as "gambl[ing]").

In the instant case, the shipper elected to use a dry shipping container rather than a refrigerated one in spite of the fact that it was known within the shipping industry that seeds are likely to emit moisture when they are not transported in a temperature controlled environment. (Jolly Aff. in Resp. to Pl.'s Mot. for Summ. J. ¶ 3); THOMAS, R.E. ET AL., THOMAS' STOWAGE 312 (3rd ed. 1995). By engaging in this cost-benefit analysis, Maua greatly increased the probability that its cargo would be damaged by sweat during shipment. (Jolly Aff. in Resp. to Pl.'s Mot. for Summ. J. ¶ 9). Had the shipper been willing to absorb the additional expense of a reefer container, the damage would probably not have occurred.

Therefore, the damage to the cargo was the result of the shipper's failure to use a reefer container and MSC is not liable for the consequences of this decision.

    **b.**    <u>**COGSA's "q" Clause Exonerates MSC from Liability**</u>

The second additional defense falls under COGSA's "q" clause, former 46 U.S.C.S. § 1304(2)(q), "which limits liability for causes 'arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the

carrier.'" *PT Indonesia Epson Indus. v. Orient Overseas Container Line, Inc.*, 208 F. Supp. 2d 1334, 1339 (S.D. Fla. 2002) (quoting former 46 U.S.C.S. §.1304(2)(q)).  As discussed in POINT III above and in MSC's motion for summary judgment, MSC and its agents were not at fault and not responsible for the cargo damage, and are therefore not liable under COGSA's "q" clause.

## CONCLUSION

Accordingly, for the foregoing reasons, MSC respectfully requests that the Court deny plaintiff's motion for summary judgment in its entirety, grant defendant's motion for summary judgment in its entirety, and for such other and further relief as the Court deems fit.

Dated: August 19, 2008

> LYONS & FLOOD, LLP
> Attorneys for Defendant
> MEDITERRANEAN SHIPPING
> COMPANY S.A.
>
> *[signature]*
> _____
> Edward P. Flood (EPF-5797)
> Michael A. Namikas
> 65 West 36th Street, 7th Floor
> New York, New York 10018
> (212) 594-2400

U:\FLOODDOC\2549114\Motions\Response to Plaintiff's Summ. Jud. Motion\Reply MOL - Liberty Summ Jud.doc

## **CERTIFICATE OF SERVICE**

Erika Tax declares and states that:

I am not a party to these actions, am over 18 years of age and reside in Queens, New York. I am an employee with Lyons & Flood, LLP, attorneys for defendant MEDITERRANEAN SHIPPING COMPANY, S.A., with offices at 65 West 36th Street, 7th Floor, New York, New York 10018.

On August 19, 2008, I served true copies of the Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment upon:

> BADIAK & WILL, LLP
> Attorney for Plaintiff
> 106 Third Street
> Mineola, New York 11501
> Attn: Alfred J. Will, Esq.
> Firm Ref: 07-J-011-AW

by U.S. Mail, first-class postage pre-paid, addressed to the last known address of the addressees as indicated above.

Executed on: August 19, 2008

_____
Erika Tax

U:\FLOODDOC\2549114\Motions\Response to Plaintiff's Summ. Jud. Motion\Reply MOL - Liberty Summ Jud.doc