UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
LIBERTY MUTUAL GROUP, INC.,
As subrogee of BODGER SEEDS, LTD.,

                    Plaintiff,                           08 CV 00223 (JSR)

       - against -                                ECF CASE

MEDITERRANEAN SHIPPING                **REPLY AFFIDAVIT**
COMPANY, S.A.,

                    Defendant.

-----------------------------------------------------X

STATE OF NEW YORK         )
                             : SS.
COUNTY OF NASSAU        )

      LISA A. SCOGNAMILLO, being duly sworn, deposes and says:

      1.  I am associated with the firm BADIAK & WILL, LLP, attorneys for Plaintiff herein. Based upon a review of the file maintained by my office, I am familiar with the facts and circumstances of this matter.

      2.  I make this affidavit in reply to the defendant's, Mediterranean Shipping Company, S.A., ("MSC") opposition to Plaintiff's summary judgment motion and in further support of Plaintiff's motion.

      3.  Annexed hereto as Exhibit 1 is the Reply Affirmation of Angelina Mbaga, Managing Director of Maua Arusha, Ltd. ("Maua"), executed on August 22, 2008.  Maua is the shipper of the subject shipment.

4. Ms. Mbaga attests to the fact that the subject seeds were shipped dry, and thus in good condition and fit for the intended voyage.

5. Ms. Mbaga also attests that Maua has shipped fifteen (15) similar dry containers of the same variety of flower seeds as involved here using the same packaging, type of container, and loading procedures each time with the same team of workers and exiting from the same port, without incident, except to the subject cargo. Significantly, Ms. Mbaga attests that all fifteen (15) containers were carried by MSC with damage only to the subject cargo.

6. Ms. Mbaga also attests that for every shipment, MSC closes the container and applies its own seal. This procedure was followed with respect to the container carrying the subject cargo and is confirmed by the applicable bill of lading which expressly states "*carrier's* seal. (Emphasis added).

7. Annexed hereto as Exhibit 2 is the Reply Affirmation of Plaintiff's surveyor, Dennis Berri of Vericlaim, executed on August 25, 2008.

8. Mr. Berri has reviewed the evidence and Affirmations submitted by MSC and attests that the mos8t likely cause of the damage is attributable to a condition of the actual carriage, all of which were under the exclusive control of MSC.

9. Annexed hereto as Exhibit 3 is the Reply Affirmation of Kenneth Bodger executed on August 22, 2008. Mr. Bodger is the CEO of Bodger Seeds, Ltd. ("Bodger"), the importer of record for the subject shipment.

10. Mr. Bodger attests that the packaging used for the subject cargo, polystyrene woven bags, is the only packaging approved by the United States government for the import of flower seeds and

that for the past several years, Bodger has imported numerous shipments from Maua in this type of packaging without incident.

11. Mr. Bodger also attests that Bodger has been doing business with Maua for several years, receiving shipments during the months of January and April (as here) in the same type of container and in the same packaging without incident.

12. Mr. Bodger also attests that the normal route for a shipment of flower seeds from Maua is from Tanzania to Long Beach, California through Holland.

13. Annexed hereto as Exhibit 4 is the survey of Plaintiff's surveyor, Dennis Berri, of the subject cargo.

14. Annexed hereto as Exhibit 5 is the "Notice of Electronic Filing" of MSC's Counter Statement to Plaintiff's Rule 56.1 Statement of Facts. This document was untimely filed on August 20, 2008. According to the Civil Case Management Plan applicable to this lawsuit (annexed hereto as Exhibit 6), all opposition papers were to be filed on August 19, 2008.

15. Defense counsel represents that ventilation records were requested for the first time in my letter of July 21, 2008. This is inaccurate. Shortly before July 21, 2008, I verbally requested ventilation records from counsel. This fact is confirmed by my July 21, 2008, a true and accurate copy of which is annexed hereto as Exhibit 7. (Portions of this letter have been redacted as they may, arguably, pertain to settlement discussions).

_____
LISA A. SCOGNAMILLO

Sworn to before me this
27th day of August, 2008

_____
NOTARY PUBLIC

JACQUELINE MOORE
Notary Public, State Of New York
No. 01MO5019312
Qualified In Nassau County
Commission Expires October 18, 2005 2009

3

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

LIBERTY MUTUAL GROUP,  INC.,
As Subrogee of BODGER SEEDS,  LTD.,

                 Plaintiff,

-      against

MEDITERRANEAN SHIPPING
COMPANY, S.A.,

                 Defendant.

-------------------------------------------------------X

08 CV 00223 (JSR)

**REPLY AFFIRMATION**

ANGELINA MBAGA, declares, under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. §1746(1), that the following is true and correct:

1. I am employed by Maua Arusha, Ltd. ("Maua") om Arusha, Tanzania, and my position/title is Managing Director.

2. Maua is in the business of exporting flower seeds.

3. I was personally involved in the shipment of flowers seeds in or about January 2007 to Environmental Seed Producers located in Lompac, California which I understand is the subject of this lawsuit.

4. I personally observed the condition of the flower seeds when they were shipped and their condition was most certainly dry and in a good condition fit for transportation.

5. I was physically present and personally observed the loading of the dry seeds into the container.  The container was dry.

6. The subject seeds were packaged in polystyrene woven plastic bags ("PP bags") which were double sewn closed.  This is the usual and customary packaging for the shipment of the type of flower seeds involved here.

7. Maua has shipped the same types of flower seeds at issue here in the same packaging on numerous prior occasions, including to Long Beach, California, without incident.

8. This shipment was carried to the United States by Mediterranean Shipping Company, S.A. ("MSC").

9. During 2006-2007, which includes the time frame of the subject shipment, Maua shipped a total of 15 containers to Europe and the United States. All of these containers were of the same type as used in this shipment. Also, each of these containers were loaded with the same variety of seeds as here; used the same packaging (PP bags); were loaded by the same team of workers using the same procedure as here; and were transported from the same port of exit. Significantly, all 15 containers were carried by MSC. There was no damage to the cargoes of any of these containers, other than the one at issue here.

10. The normal procedure is for MSC to close the container and apply their own seal. This same procedure was utilized here. For this particular shipment, MSC closed the container and applied its own as evidenced by the applicable bill of lading.

11. Maua has shipped the same type of flower seeds to Long Beach, California in the same manner and under similar circumstances as shipped here, in a dry container, on numerous prior occasions with MSC without incident. The manner and method of shipment utilized here is the usual and customary manner and method of shipping the flower seeds with MSC.

12. The flower seeds were in fit internal order and condition to survive the voyage for which they were booked and in a condition fit for transportation.

I declare, under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. §1746(1) that the foregoing is true and correct.

Executed on August __22nd__, 2008

Signature –
Title/Position:

2

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
LIBERTY MUTUAL GROUP, INC.,
As Subrogee of BODGER SEEDS, LTD.

        **REPLY AFFIRMATION**

      Plaintiff,

        **ECF CASE**

  -  against -

MEDITERRANEAN SHIPPING
COMPANY, S.A.,

        08 Civ. 00223 (JSR)

      Defendant.

-----------------------------------------------------------X

DENNIS BERRI declares, under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. §1746, that the following is true and correct:

1. I am a Senior Marine Surveyor employed by Vericlaim continuously since 2000. I have been employed as a cargo surveyor continuously from 1984 to the present. In my capacity as cargo surveyor, I have extensive experience inspecting organic cargoes such as flower seeds.

2. On April 17, 2007, on behalf of plaintiff LIBERTY MUTUAL GROUP INC., I inspected a cargo of flower seeds carried by Mediterranean Shipping Company, S.A. ("MSC") from Tanga, Tanzania to Long Beach, California in or about January 2007. I understand that this shipment is the subject of this lawsuit.

3. The April 17, 2007 survey was also attended by Captain Arun Jolly, MSC's surveyor.

4. I have reviewed the Affirmation of Captain Arun Jolly In Support of MSC's Motion for Summary Judgment executed on August 7, 2008 ("Jolly Aff."), as well as Captain Jolly's Supplemental Affirmation dated August 19, 2008. ("Jolly Supp. Aff."). The Jolly Aff. is annexed hereto as Exhibit A.

5. I have also reviewed Captain Jolly's survey report and original color versions of the photographs attached to that report. Captain Jolly's survey with black and white photos is annexed hereto as Exhibit B and will be referred to herein as the "Jolly Survey."

6. The Jolly Aff. suggests that the water damage to the subject cargo was due to excessive moisture in the flower seeds and alleges (at ¶ 8) that the damage was caused by "condensation [which] was the result of the subject cargo releasing, or sweating, its inherent moisture over the course of the lengthy ocean voyage. This condensation formed on the interior container panels and subsequently wet the bags pressed against the panels and rear door of the container."

7. Captain Jolly's conclusion is not supported by the facts. Normal sweating sometimes associated with organic cargoes should not have caused damages of the magnitude sustained by the subject cargo.

8. Nor do the facts support a conclusion that excessive moisture in the flower seeds caused the damaged. A determination that a particular organic cargo was damaged by condensation and sweating as a result of excessive inherent moisture, as suggested by Captain Jolly (discussed above), requires a Moisture Content Test showing that the

cargo in fact contained excessive moisture. There is no evidence that Captain Jolly's allegation is supported or based upon any such testing.

9.   The Jolly Supp. Aff. attests that *seeds* have a tendency to sweat and, in support, refers to Thomas' Stowage which is attached to the Jolly Supp. Aff. The annexed excerpt from Thomas' Stowage states that *seeds* contain oil and that *seedlings* "may give off moisture." The subject cargo consisted of flower *seeds*. There is a significant difference between a seed, which is what is planted in the ground, and a seedling, which forms when the seed begins to sprout and take root.

10.   The Jolly Supp. Aff. also states that, on April 13, 2007, Captain Jolly inspected "the majority of the container's surfaces at the terminal in Long Beach, California." As discussed more fully in the following paragraphs, this statement is misleading.

11. As discussed more fully below, a review of the Jolly survey reveals that Captain Jolly never actually viewed the bags of flower seeds while they were still in the container, nor did Captain Jolly ever view the inside of the container or completely inspect the exterior of the container. (Jolly Survey at pages 2-3).

12. The Jolly survey expressly states that he viewed the container on April 13, 2007, *after* the consignee unloaded the container and *after* the container had already been loaded with a subsequent unrelated cargo by another shipper and *already sealed.* (Jolly Survey at pages 2-3).

13. Thus, as indicated by Captain Jolly's own survey, he did not actually see "condensation formed on the interior container panels," or "bags pressed against the panels and rear door of the container." (Jolly Aff. ¶ 8. See also Jolly Supp. Aff. ¶ 5).

14. As already discussed, any sweating associated with organic cargoes should not have caused the excessive damage sustained by the subject cargo here.

15. Extensive damage such as that sustained by the subject cargo is usually caused by excessive condensation and/or sweating, which is, very often, the result of environmental factors such as changes in temperature and high humidity levels, which can be controlled by a carrier's proper care of the cargo, as discussed more fully below.

16. I have reviewed the Affirmation of Stefaan Deconinck In Support of MSC's Motion for Summary Judgment dated August 7, 2008 ("Deconinck Aff.") wherein MSC alleges the container was carried both above and below deck aboard four (4) different vessels over a 75-day period starting from 1) Tanga, Tanzania to Dar es Salaam, Tanzania; 2) from Dar es Salaam, Tanzania to Jeddah, Saudi Arabia; 3) from Jeddah, Saudi Arabia to Ningbo, China; and, finally 4) from Ninbo, China to Long Beach California. The Deconinck Aff is annexed hereto as Exhibit C.

17. I have also reviewed the Affirmation of Captain V.S. Parani In Response to Plaintiff's Motion for Summary Judgment executed on August 15, 2008 submitted by MSC in opposition to Plaintiff's motion for summary judgment.

18. Organic cargoes, such as a shipment of flower seeds involved here, are usually delivered within a relatively short period of time and only transported over a period of a few weeks.

19. Given 1) the number of times the container was transloaded; 2) the container's different storage locations and conditions on each of the four (4) vessels; 3) the many different ports of call the container entered; 4) and the unusually long 75 day journey, it is likely that the flower seeds here were subject to many changes in temperature, weather, humidity levels, storage conditions and other atmospheric and environmental factors, any one or all or a combination of which likely caused condensation on the flower seeds and/or caused the flower seeds to sweat as claimed by Captain Jolly. This would be true despite the fact that the container allegedly had 'passive ventilation' through its vents.

20. Proper care of the containerized flower seeds by MSC would have included a shorter voyage of no more than a few weeks; not exposing the container to numerous    ports with diverse climates, temperatures, humidity levels, and other environmental and atmospheric conditions; and not transloading the container aboard four (4) different vessels where it was subject to varying storage locations, i.e., above and below deck.

21. There is no Moisture Content Test to support MSC's claim that the damage was caused by excessive condensation or sweating due to an inherent vice of the cargo. It is more likely that the water damage to the subject cargo was caused by changes in environment as the

container was transloaded aboard four (4) different vessels during an abnormally lengthy 75 day voyage via a route from Tanzania to Long Beach, California, with several stops in between where it was exposed to diverse and detrimental atmospheric conditions.

22. Captain Jolly also claims that he inspected "a majority of the container's surfaces at the terminal in Long Beach, California," concluding "the container was in satisfactory condition with no apparent visible damage or defects." (Jolly Supp. Aff. ¶4).

23. As discussed above, and as indicated by Captain Jolly's own survey (Jolly Survey at pages 2-3), Captain Jolly never inspected the *interior* of the container as the container was already loaded with another shipper's cargo and *sealed*. (Jolly Survey at pages 2-3).

24. Captain Jolly's examination of the exterior of the container was admittedly incomplete. (Jolly Supp. Aff. ¶ 4). As indicated by the pictures annexed to the Jolly survey (the originals of which I reviewed in color), two other containers were stacked on top of the subject container, thus preventing Captain Jolly from inspecting the roof of the container. Also, other containers were packed closely on one side of the subject container, thus preventing Captain Jolly from inspecting that side of the container.

25. In fact, Captain Jolly's own survey expressly states that "The container was found to be in satisfactory condition *as from what could be seen*. We were only able to inspect the door panels, the front panels and right side panels." (Jolly Survey at page 3) (emphasis added).

26. I never examined the wet bags of flower seeds while they were in the subject container. Thus, I have no personal knowledge of the location of the wet bags of flower seeds while they were in the subject container.

27. I never examined the subject container and thus, have no personal knowledge about the condition of the subject container.

28. I did not rely on the statements of any ESP employees for my conclusions as set forth in my survey report of the subject cargo.

I declare, under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. §1746(1) that the foregoing is true and correct.

Executed on August 25, 2008

DENNIS BERRI
SENIOR MARINE SURVEYOR
VERICLAIM

# BERRI

# EXHIBIT A

LYONS & FLOOD, LLP
65 W. 36th Street, 7th Floor
New York, NY 10018
(212) 594-2400

Attorneys for Defendant
MEDITERRANEAN SHIPPING COMPANY, S.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

LIBERTY MUTUAL GROUP INC.
as subrogee of BODGER SEEDS, LTD.,

                        Plaintiff,

               - against -

MEDITERRANEAN SHIPPING COMPANY S.A.,

                      Defendant,

------------------------------------------------------------X

**ECF CASE**

08 Civ. 00223 (JSR)

**AFFIRMATION OF CAPTAIN
ARUN JOLLY IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT**

CAPTAIN ARUN JOLLY affirms the following under the penalties of perjury
under 28 USC § 1746:

    1.      I am a marine surveyor for Techno Marine Services, located in San Pedro,
California. I have been a marine surveyor for over twenty (20) years. I have personal
knowledge of the facts contained herein.

    2.      On April of 2007, I was appointed by MEDITERRANEAN SHIPPING
COMPANY S.A. ("MSC") to conduct a damage survey relating to a shipment of flower seeds
shipped from Tanga, Tanzania to Long Beach, California aboard MSC vessels. The shipper's
flower seeds were shipped in an MSC container numbered MSCU1550902. The receiver,
Environmental Seed Producers ("ESP"), claimed that some of the cargo was wet.

3.  On April 13, 2007, I attended a joint survey of the subject cargo on behalf of defendant MSC. Also in attendance were Dennis Berri of Vericlaim and Anita Laemoa of ESP.

4.  At the survey, I was told by Mr. Joseph Apoliner of ESP that upon arrival on April 10, 2007 at ESP's facility, the container had no visible damage or defects at the time the cargo was unloaded.

5.  Some of the bags of flower seeds were wet. Samples of the wet bags were tested with a silver nitrate solution for the presence of seawater. The test results were negative, confirming fresh water wetting as opposed to seawater contamination.

6.  I also inspected the subject container and found its condition to be satisfactory.

7.  Recognizing that the container was in good condition without any noted defects, the organic nature of the subject cargo, and the pattern of the wetting, it was apparent that the wetting was due to condensation.

8.  The condensation was the result of the subject cargo releasing, or sweating, its inherent moisture over the course of a lengthy ocean voyage. This condensation formed on the interior container panels and subsequently wet the bags pressed against the panels and rear door of the container.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: August 7, 2008

Captain Arun Jolly

U:\FLOODDOC\2549114\Motions\Motion for Summary Judgment\Aff-Jolly.doc

-2-

# BERRI

# EXHIBIT B

# Techno Marine Services
Marine Surveyors and Consultants

P.O. Box 1732
San Pedro, CA 90733-1732          ❂ Phone: 714-816-8735 ❂ Fax: 714-826-4080

SURVEY REPORT NO. 20 – 3338

THIS IS TO CERTIFY that the undersigned did at the request of Messrs. Mediterranean Shipping Company, Marine Claims Department, New York, attend investigation and inspection of the alleged wetting damage to the shipment and condition of the container and advise as follows:

We were advised that the consignee had informed MSC Lines that the shipment of flower seeds was received damaged by water.

| | |
|---|---|
| MSC REF.: | GVA 2007- 5152 – 561 - 2 / T - 2382 |
| VESSEL: | MSC ROYAL ZANZIBAR<br>Voyage 56A |
| LOADED AT: | TANGA, TANZANIA |
| DATE OF LOADING: | JANUARY 26, 2007 |
| ARRIVAL LONG BEACH: | APRIL 5, 2007 |
| BILL OF LADING: | MSCUTA011091<br>Dated January 26, 2007 |
| CONTAINER: | MSCU1550902 |
| SHIPMENT: | 648 BAGS FLOWER SEENDS |
| SHIPPER: | MAUA ARUSHA LTD.<br>ARUSHA, TANZANIA |
| CONSIGNEE: | ENVIRONMENTAL SEED PRODUCERS<br>1851 W. OLIVE AVENUE.<br>LOMPOC, CA 93436 |
| NATURE OF SURVEY: | CONSIGNEE REPORTED WETTING DAMAGE ON THE SHIPMENT RESULTING IN CLUMPING OF SEEDS, MOLD, DISCOLORATION AND DETERIORATION IN QUALITY. |
| SURVEY DATE: | APRIL 13 & 17, 2007 |

❂ Pager: 310-730-4788 ❂ Mobile: 310-344-1240 ❂ E-Mail: JollyTMS@aol.com

# Techno Marine Services
Marine Surveyors and Consultants

P.O. Box 1732
San Pedro, CA 90733-1732          ● Phone: 714-816-8735 ● Fax: 714-826-4080

SURVEY REPORT NO. 20 – 3338

SURVEY LOCATION:

SSA TERINAL
PIER A STREET, LONG BEACH, CA

ENVIRONMENTAL SEEDS PRODUCERS W'HOUSE
1851 WEST OLIVE AVENUE
LOMPOC, CA 93426

SURVEY ATTENDED BY:

TECHNO MARINE SERVICES          CAPT. ARUN K. JOLLY

CONSIGNEE'S REPRESENTATIVE    MS. ANITA M. LAEMOA

MARINE UNDERWRITER SURVEYOR   MR. DENNIS BERRI

SURVEYOR'S NOTES

On April 11, 2007 our office was advised by Mediterranean Shipping Lines, Marine Claims Department, New York, that the consignee had reported wetting damage on the shipment of Flower Seeds.

We immediately contacted the consignee, Environmental Seed Products, Ms. Anita M. Laemoa and were advised that the container was devanned on April 10, 2007 and returned to the terminal.

We then contacted the SSA Terminal and were advised that the container was sent out on the next deployment to load an out bound shipment.

SSA Terminal was requested to advise our office as soon as the loaded container was in gated into the terminal.

We also advised the consignee to contact their Insurance company Liberty Mutual in case they wish to hold a joint inspection.

April 13, 2007 we were advised by SSA Terminal that the container was in the terminal and was scheduled to be loaded onto the MSC Debra V. 713 for discharge port KHH.

Hence we proceeded to the terminal on April 13, 2007 at 1030 hours and inspected the loaded and sealed container. The container was found to be in satisfactory condition.

2

# Techno Marine Services
Marine Surveyors and Consultants

P.O. Box 1732
San Pedro, CA 90733-1732 ● Phone: 714-816-8735 ● Fax: 714-826-4080

SURVEY REPORT NO. 20 - 3338

Upon receiving the request by the marine underwriter surveyor to inspect the container on April 14, 2007 we contacted the terminal and were advised that the container had already been stowed on board the vessel and would not be available for a joint inspection here in Los Angeles.

On April 17, 2007 we proceeded to Environmental Seeds Producers in Lompoc CA and inspected the nature and extent of damage along with Mr. Dennis Berri, surveyor representing the marine underwriters of the shipment.

CONTAINER MSCU1550902

Type: 20 foot enclosed end loading with corrugated metal panels.

Date of Mfg.: 10/2002

Location: On the ground at the Pier A Street Terminal location C 149.

Seal: The container was sealed with seal number PCR LLC 0207050.

Condition: The container was found to be in satisfactory condition as from what could be seen. We were able to inspect the door panels, the front panels and the right side panels.

The door rubber gaskets were in good condition.

Two side vents on the right side panels in the front and door end were seen partially sealed with cellophane tape.

INSPECTION OF THE SHIPMENT ON APRIXL 17, 2007 ALONG WITH MR. DENNIS BERRI, SURVEYOR REPRESENTING THE MARINE UNDERWRITERS

At time of our inspection also present was Mr. Joe Apoliner, warehouse receiving personnel and Ms. Anita Laemoa.

According to Mr. Joe Apoliner, the shipment was devanned on April 10, 2007. There was no apparent visible damage to the container.

During devanning the shipment they noticed streaks of condensed beads of water along the side panels of the container, being more pronounced in the after half of the container.

The sides of the bags that were in contact with the condensed water inside the side panels, were wet and had rust stains.

3

# Techno Marine Services
Marine Surveyors and Consultants

P.O. Box 1732
San Pedro, CA 90733-1732          ❂ Phone: 714-816-8735 ❂ Fax: 714-826-4080

SURVEY REPORT NO. 20 - 3338

The top of the upper most tier of bags was also seen to be slightly damp to the touch.

We were advised that the bags were stowed to a height of approximately 5 feet and there was a 3 feet void under the roof panels.

The container was returned to the trucker the same day.

During our inspection we noticed some bags had wet stains along either one end or on the side.

The seeds in the wet stained bags were inspected. The stained portion of the bags was cut and the seeds directly adjacent to the wet stains were seen to be wet and discolored and moldy.

We inspected also seeds in bags that did not have any apparent visible wet stains. The seeds in these bags were found to be in satisfactory condition. The seeds were dry and there was no discoloration or shrinkage.

The shipment comprised of the following seed varieties:

| Item | Description | Qty Kg | Number Bags |
|------|-------------|--------|-------------|
| 19023 | Tropaeolum Maj. Scarlet Gleam | 500.00 | 20 |
| 19135 | Zinnia El. Tetra State Fair Max | 121.00 | 5 |
| 17948 | Tagetes Pat. Brocade Mixed | 30.00 | 3 |
| 19028 | Zinnia El. Dahliafil. Canary Bird | 80.00 | 4 |
| 17947 | Tagetes Pat. Nana Petite Yellow | 49.00 | 4 |
| 19022 | Tropaeolum Maj. Golden Gleam | 426.00 | 17 |
| 19025 | Tropaeolum Nanum Alaska Mix | 327.00 | 13 |
| 19015 | Tropaeolum Nanum Express of India | 669.00 | 29 |
| 19027 | Tropaeolum Maj. Cherry Rose | 193.50 | 8 |
| 19131 | Zinnia El. Willy Rogers | 79.00 | 4 |
| 19026 | Tropaeolum Maj. Tall Sgl. Mixed | 641.00 | 26 |
| 19024 | Tropaeolum Maj. Glorius Gleam Mix. | 242.00 | 10 |
| 19014 | Tropaeolum Nanum Whirllybird Mix | 500.00 | 20 |
| 17939 | Thunbergia Alata Mix | 112.00 | 5 |
| 17950 | Tropaeolum Maj. Dwarf Jewell Mix | 12,000.00 | 480 |
| Total | | 15,969.50 Kg | 648 bags |

❂ Pager: 310-730-4788 ❂ Mobile: 310-344-1240 ❂ E-Mail: JollyTMS@aol.com

# Techno Marine Services
Marine Surveyors and Consultants

P.O. Box 1732
San Pedro, CA 90733-1732          ◉ Phone: 714-816-8735 ◉ Fax: 714-826-4080

SURVEY REPORT NO. 20 - 3338

According to the commercial invoice issued by Maua Arusha Ltd., Arusha Tanzania issued to Environmental Seeds Producers, invoice number 48 dated January 3, 2007 the value of the shipment was stated to be USD $63,688.13.

We inspected the following seeds:

Tropaeolum      The seeds adjacent to the wet stains on the bags were mold and clumped together. On account of the moisture in the bags some of the seeds were seen brown discolored and had shrinkage.

The seeds in the bags that did not have any mold stains appeared to be in satisfactory condition.

Zinnia          The bags inspected did not have any stains. The seeds were found to be in apparent visible satisfactory condition.

Thunbergia      Same as above.

Tagetes         Same as above.

## SILVER NITRATE TESTS

The wet stained portion of the bags were tested with silver nitrate solution and the tests proved **negative** as to the presence of chlorides.

## DISCUSSIONS

During our discussions with the consignee, Ms. Anita Laemoa we were advised that they would be sending samples of the different varieties of the seeds to the laboratory to ascertain the extent of damage to the seeds on account of the same being subjected to moisture.

It was recommended that samples also be sent from the bags that were not directly affected by moisture especially those stowed within the container away from the panels.

## CONCLUSION

Based on our inspection and information provided to our office we conclude by stating that the shipment was apparently effected by condensation within the confines of the container resulting from the inherent moisture within the shipment of different varieties of flower seeds.

5

# Techno Marine Services
Marine Surveyors and Consultants

P.O. Box 1732
San Pedro, CA 90733-1732     ● Phone: 714-816-8735 ● Fax: 714-826-4080.

SURVEY REPORT NO. 20 - 3338

The seeds in the bags that were directly in contact with the side panels of the container sustained wetting from the condensed beads of water dripping down the side panels and the seeds adjacent to the wet stains on the bags were found to be wet, moldy, clumped together and discolored.

There did not appear to be any damage to the container as seen during our inspection at the SSA Terminal Long Beach after it was in gated into the terminal loaded with an out bound shipment.

The Phytosanitary Certificate is dated January 8, 2007, the invoice is dated January 9, 2007 and the master bill of lading is dated January 26, 2007.

The shipment was received by the consignee on April 10, 2007.

Hence the shipment was in the container for approximately 90 days.

We estimate damage to the seed of Tropaeolum in some of the bags that were stowed adjacent to the side panels.

Each bag measured 30"x22"x8". Hence we estimate damage to approximately 128 bags of Tropaeolum Seeds (each bag containing 25 kgs) out of the 648 bags that were directly in contact with the side panels amounting to approximately $11,000.00.

This report is based only on the facts presently known to the surveyor in attendance and is submitted without prejudice to the rights of whom it may concern.

The right to amend or supplement this report should additional information be made available is reserved.

Techno Marine Services
Issued at Los Angeles
Dated April 20, 2007

6



MSCU1550902 Inspected at SSA Terminal Long Beach on April 13, 2007
Mfg. Date 10/2002    Dioor gaskets in good condition.



No damage to panels. Container in apprent visible satisfactory conditon.







Side vents partially taped over.



INSPECTION OF SHIPMENT AT ENVIRONMENTAL SEED PRODUCTS
LOMPOC CA ON APRIL 17, 2007







Wet stains on side of bags











Tropaeolum seeds in wet stained bags partially moldy and shrunk















Wet clumps of seeds







Wet Stains on Bags









Seeds wet near stains on bags. Moldy





Zinnia Seeds Dry & In Good Condition





Thunbergia Seeds in good conditon.





We stains on side of bags



Tangetas Seeds in good condition.

# BERRI

# EXHIBIT C

LYONS & FLOOD, LLP
65 W. 36th Street, 7th Floor
New York, NY 10018
(212) 594-2400

Attorneys for Defendant
MEDITERRANEAN SHIPPING COMPANY, S.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

LIBERTY MUTUAL GROUP INC.
as subrogee of BODGER SEEDS, LTD.,

          Plaintiff,

        - against -

MEDITERRANEAN SHIPPING COMPANY S.A.,

         Defendant,

-------------------------------------------------------X

ECF CASE

08 Civ. 00223 (JSR)

**AFFIRMATION OF STEFAAN
DECONINCK IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT**

STEFAAN DECONINCK declares the following under the penalty of perjury under the laws of the United States of America:

1.     I am an employee of defendant MEDITERRANEAN SHIPPING COMPANY, S.A. ("MSC") and hold the position of Regional Claims Manager for North America. In this capacity, I have been involved in the handling of this claim and have personally reviewed all relevant documents relating to this matter, including the booking and shipment of this container. Accordingly, I have personal knowledge of the facts contained herein.

2.     MSC is an ocean carrier and is the operator of the M/V MSC ROYAL ZANZIBAR, M/V MSC NAMIBIA, M/V MSC SILVANA, and M/V MSC ILONA.

3.     In January of 2007, MSC contracted with Environmental Seed Producers ("ESP"), a producer and distributor of flower seeds, for the shipment of 648 bags of flower seeds from Tanga, Tanzania to Long Beach, California.

4.    Pursuant to the shipment, MSC provided the Tanzanian shipper Maua Arusha, Ltd. ("Maua") with an empty twenty foot long dry container (no. MSCU1550902). As per the custom in the industry, Maua loaded the cargo in the container and then locked and sealed said container. MSC never received any complaints from Maua regarding the condition of the subject container.

5.    The subject container was loaded aboard the M/V MSC ROYAL ZANZIBAR on January 26, 2007 and transported to the United States pursuant to MSC Bill of Lading number MSCUTA011430, attached to this Affirmation as Exhibit A.  MSC's standard bill of lading includes Clause 17, which states that "If the shipper or his servant stuffs the container, the Merchant shall be responsible for the proper stowage and securing of the goods to insure ventilation and to avoid shifting."

6.    The container traveled from Tanga to Long Beach on four different vessels: the M/V MSC ROYAL ZANZIBAR from Tanga, Tanzania to Dar es Salaam, Tanzania; the M/V MSC NAMIBIA from Dar es Salaam, Tanzania to Jeddah, Saudi Arabia; the M/V MSC SILVANA from Jeddah, Saudi Arabia to Ningbo, China; and the M/V MSC ILONA from Ningbo, China to Long Beach, California. The container was stowed both below deck and on deck over the course of the approximately seventy-five (75) days it was aboard these vessels.

7.    The M/V MSC ILONA arrived at the terminal in Long Beach, California on or about April 10, 2007. The container was discharged from the vessel and subsequently delivered to ESP's facility in Lompoc, California, on or about April 10, 2007.

- 2 -

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:        August 7, 2008

Stefaan Deconinck

U:\FLOODDOC\2549114\Motions\Motion for Summary Judgment\Aff - Deconinck.doc

- 3 -

# EXHIBIT A

MSC 71A 0107

# MEDITERRANEAN SHIPPING COMPANY S.A., Geneva

**ORIGINAL BILL OF LADING**

MSCUJA011430

| (1) SHIPPER (Full details) | (2) CONSIGNEE (Not Negotiable unless 'To Order of') |
|---|---|
| MADAI KUSHAUTS P.O.BOX 15002 TEL (00 255) 20 756 273565 ARUSHA, TANZANIA | ENVIRONMENTAL SEEDS PRODUCERS W.OLIVE AVE LOMPOC CA USA 181 735515 C/O JGCOGEN SEEDS LTD MT VERN 91733 3618 USA 151 034 861 1800 |

ORIGINAL

| (3) NOTIFY (No responsibility shall attach to Carrier or to his Agent for failure to notify) | (4) SPACE FOR CARRIER'S AGENTS ENDORSEMENTS (FCL/FCL, SLAC) |
|---|---|
| EXPEDITOR INTERNATIONAL KIN SAT 6W CENTURY BLVD 6TH FLOOR LOS ANGELES CA USA 920 (90014) | FCL/FCL LINER IN FREE OUT |

RECEIVED MAR 20 2007

| (5) PRE-CARRIED BY (Combined Transport only) | (6) PLACE OF RECEIPT (Combined Transport only) |
|---|---|
| | |

| (7) PORT OF LOADING | (8) PORT OF DISCHARGE |
|---|---|
| TANGA | LONG BEACH |

| (9) PLACE OF DELIVERY (Comb. Transport) | (10) MODE OF CARRIAGE (Comb. Transport) |
|---|---|
| | |

| (11) VESSEL & VOY | (12) AGENTS AT PORT OF DISCHARGE / DELIVERY |
|---|---|
| ROYAL ZANZIBAR | |

| (13A) CARRIER'S RECEIPT (continued on attached Bill of Lading Rider page if applicable) | (13) | | | Cargo Description (Continued on attached Bill of Lading Rider page if applicable) | Gross Weight | Measurement |
|---|---|---|---|---|---|---|
| | | | | 1 X 20' CNTR (S) STC 648 BAGS OF FLOWER SEED 648 BAGS | 19000,000 KG | |
| | | | | | | |
| TOTAL TAARE 2200.000 KG | | | | TOTALS | 19000,000 KG | |

SHIPPED ON BOARD

AS DECLARED & SHIPPER CLEAN ON BOARD

| (15) FREIGHT & CHARGES (PAYABLE signifies INTENTION. Cargo shall not be delivered unless Freight & Charges are paid) | | | | | | |
|---|---|---|---|---|---|---|
| Specification of Freight & Charges | | Basis | Rate | PREPAID | PAYABLE at | ELSEWHERE |
| | | | | | | |

FREIGHT PAYABLE AT DESTINATION

| Declared Value | | TOTAL FREIGHT & CHARGES | |
|---|---|---|---|

| PLACE AND DATE OF ISSUED JAN 2007 | SHIPPED ON BOARD 26 JAN 2007 | SIGNED ON BEHALF OF THE MASTER |
|---|---|---|

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
LIBERTY MUTUAL GROUP, INC.,                    08 CV 00223 (JSR)
As Subrogee of BODGER SEEDS, LTD.,

                 Plaintiff,                    **REPLY AFFIRMATION**

-     against     -

MEDITERRANEAN SHIPPING
COMPANY, S.A.,

                 Defendant.

--------------------------------------------------------X

     KENNETH BODGER declares, under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am the CEO of Bodger Seeds, Ltd., ("Bodger"),the importer of record of the shipment at issue in this lawsuit, and Vice President of John Bodger & Sons, the parent company. I have held these positions for approximately twenty (20) years.

2. I have personal knowledge of and experience with the appropriate and typical, customary packaging for flower seeds, like those at issue here, shipped to the United States.

3. The appropriate and typical, customary packaging for the shipment to the United States of flower seeds identical to those at issue here consists of using polystyrene woven plastic bags which are double sewn closed. The use of this type of woven bag allows the seeds to breathe, thus avoiding sweat damage.

4. Another possible way to ship flower seeds in order to allow them to breathe is by using a woven bag made of jute. However, the United States does not allow the use of jute bags as they have a tendency to carry parasites. Thus, effectively, the only way to import flower seeds to the United States is by using polystyrene woven bags.

5. My company has been doing business with Maua Arusha, Ltd., the company from which the flower seeds at issue here were shipped, for the past several years (about 3or 4). The flower seeds are always received in Long Beach, California between the months of January and

April. The flower seeds are always shipped in the same type of polystyrene woven bag and in the same type of container as the subject cargo was shipped, and there has never been any incidence of sweat damage. In other words, the same cargo has been shipped numerous times in the past with identical packaging in the same or similar containers without incident. This claim represents the first time we have ever received water damaged flower seeds, or any type of damage, on a shipment from Maua.

6. The typical route for a shipment of flower seeds from Maua is from Tanzania to Holland to Long Beach, California.

I declare under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on August 22, 2008

KENNETH BODGER

# EXHIBIT 4



Providing claims services to the insurance industry since 1918
A member of VrS uni)(verse
adjusters network LLC

700 South Flower Street · Suite
Los Angeles, California
Tel 213.94
Toll Free 800.99
Fax 213.94

## MARINE CARGO SURVEY REPORT NO. LAX07288500/TMS/DWB

Examined For The Account Of Whom It May Concern

At The Request Of

Liberty International Underwriters
55 Water Street, 18th Floor
New York, NY 10041
**Your Reference No.: Bodger Seeds/
LIU #4NMAR-99016**

RE: **Vessel** : "MSC ILONA" V.0701A

**Arrival** : Long Beach, California; on or about April 4, 2007

**Bill of Lading No.** : TANG/LONG BEACH; No. MSCUTA011430

**Container No.** : MSCU1550902

**Shipment** : 648 Bags of Flower Seeds

**Assured** : Environmental Seed Producers

**Policy No.** : APPOMCSE018791006

THIS IS TO CERTIFY THAT:

### BACKGROUND:

Survey was requested on April 13, 2007, by Fred Fernandez of Liberty International Underwriters.

At the time of assignment, no dollar amount of loss was provided to us. It was reported that the stated shipment had suffered water damage.

VeriClaim

SURVEY REPORT NO. LAX07288500/TMS/DWB    PAGE NO. 2

## SHIPMENT PARTICULARS:

Shipment:      648 Bags of Flower Seeds, Weighing 15,969.5 Kilos:

| Item No. | Item Description | Qty in Kilo | Number Of Bags | Bag Number |
|----------|------------------|-------------|----------------|------------|
| 19023 | Tropaeleum Maj. Scarlet Gleam | 500.00 | 20 | 1-20 |
| 19135 | Zinnia El. Tetra State Fair Mix | 121.00 | 5 | 21-25 |
| 17948 | Tagetes Pat. Brocade Mix | 30.00 | 3 | 26-28 |
| 19028 | Zinnia El. Dahliafl.Canary Bird | 80.00 | 4 | 29-32 |
| 17947 | Tagetes Pat. Nana Petite Yellow | 49.00 | 4 | 33-36 |
| 19022 | Tropaeolum Maj. Golden Gleam | 426.00 | 17 | 37-53 |
| 19025 | Tropaeolum Nanum Alaska Mix | 327.00 | 13 | 54-66 |
| 19015 | Tropaeolum Nanum Empress of India | 669.00 | 29 | 67-95 |
| 19027 | Tropaeolum Maj. Cherry Rose | 193.50 | 8 | 96-103 |
| 19131 | Zinnia El. Willy Rogers | 79.00 | 4 | 104-107 |
| 19026 | Tropaeolum Maj. Tall Sgt. Mix | 641.00 | 26 | 108-133 |
| 19024 | Tropaeolum Maj. Glorious Gleam Mix | 242.00 | 10 | 134-43 |
| 19014 | Tropaeolum Nanum Whirly Bird Mix | 500.00 | 20 | 144-163 |
| 17939 | Thunbergia Alata Mix | 112.00 | 5 | 164-168 |
| 17950 | Tropaeolum Maj. Dwarf Jewell Mixed | 12,000.00 | 480 | 169-648 |

VeriClaim

SURVEY REPORT NO. LAX07288500/TMS/DWB    PAGE NO. 3

| | |
|---|---|
| **Invoice No:** | 48 dated January 3, 2007; US$63,688.13 basis for the entire shipment. |
| **Shipper:** | Maua Arusha Ltd.<br>P.O. Box 15002<br>Arusha, Tanzania |
| **Consignee:** | Environmental Seed Producers<br>1851 West Olive Avenue<br>Lompoc, CA  93436 |

## TRANSIT DETAILS:

The shipment was loaded onboard the M/V "ROYAL ZANZIBAR" V.56R on January 26, 2007, in the Port of Tanga, Tanzania and transported to Long Beach, arriving on April 4, 2007. The shipment had been transloaded onboard the M/V "MSC ILONA" V.0701A; however, we were unable to determine the port or date of the transload.

## EXCEPTIONS:

No exceptions were taken at the time of delivery.

## SURVEY / INVESTIGATION FINDINGS:

Attendance Date and Location:

- April 17, 2007 at Environmental Seed Producers, 1851 West Olive Avenue, Lompoc, CA  93436

Parties in Attendance:

- Capt. Arun Jolly, Techno Marine Services on behalf of Carrier's interests.

- Ms. Anita Laemoa of Environmental Seed Producers

- Dennis Berri, Senior Surveyor, Vericlaim, Inc., on behalf of Underwriter's interests.

SURVEY REPORT NO. LAX07288500/TMS/DWB    PAGE NO. 4

**NARRATIVE:**

Subsequent to receiving this assignment, contact was made with the Ultimate Consignee and an appointment was arranged to complete a joint survey with the carrier's surveyor on April 17, 2007. Upon arrival at the Consignee's facility, we were escorted to the warehouse, where the shipment was being held, pending our arrival. At that time we found a total of 648 bags containing various types of flower seeds as seen in the attached **Photographs Numbered 1 through 24**. It was noted that the packaging utilized was polystyrene woven plastic bags, which were double sewn closed. No inner lining was utilized within the woven plastic bags. Initial examination of the bags showed signs of rust marks on the exterior of numerous bags, along with water staining. We also noted signs of water condensation within the shrink-wrap, which was holding the bags in place on wood pallets, where they were being stored on.

Initially, we noted a number of different types of style species and seeds to be included in those shipments. The following is a breakdown of the quantity of bags per species:

| Item No. | Item Description | Qty in Kilo | Number Of Bags |
|---|---|---|---|
| 19023 | Tropaeleum Maj. Scarlet Gleam | 500.00 | 20 |
| 19135 | Zinnia El. Tetra State Fair Mix | 121.00 | 5 |
| 17948 | Tagetes Pat. Brocade Mix | 30.00 | 3 |
| 19028 | Zinnia El. Dahliafl.Canary Bird | 80.00 | 4 |
| 17947 | Tagetes Pat. Nana Petite Yellow | 49.00 | 4 |
| 19022 | Tropaeolum Maj. Golden Gleam | 426.00 | 17 |
| 19025 | Tropaeolum Nanum Alaska Mix | 327.00 | 13 |
| 19015 | Tropaeolum Nanum Empress of India | 669.00 | 29 |
| 19027 | Tropaeolum Maj. Cherry Rose | 193.50 | 8 |
| 19131 | Zinnia El. Willy Rogers | 79.00 | 4 |
| 19026 | Tropaeolum Maj. Tall Sgt. Mix | 641.00 | 26 |
| 19024 | Tropaeolum Maj. Glorious Gleam Mix | 242.00 | 10 |
| 19014 | Tropaeolum Nanum Whirly Bird Mix | 500.00 | 20 |
| 17939 | Thunbergia Alata Mix | 112.00 | 5 |
| 17950 | Tropaeolum Maj. Dwarf Jewell Mixed | 12,000.00 | 480 |

It was noted that there was actually only four (4) types of actual species; however, that the different item numbers are different colors and variations of those species. We therefore had the Consignee open up a random sampling of each type of seed in an effort to ascertain the condition of the seeds within the plastic bags. The first item examined was the Tropaeolum (Renuncula). Illustrations of the seeds, which were found in the sampling of those bags, can be seen in **Photographs Numbered 4 through 15, 17 and 18.** It was noted the seeds had experienced contact with moisture, causing the seeds to shrink and become a dark color, as well as bunching together and becoming moldy to varying degrees.

The second type of seeds examined consisted of the Zinnia. Illustrations of the condition of this particular seed and sampling examined can be seen in **Photograph No. 16.** No signs of obvious damage were noted to this particular seeds; however, the Consignee stated that the seeds did feel slightly wet to the touch and may have been affected.

The third type of seed, which was examined from the sampling, was from the Tropaeolum species. Illustrations of the condition of this species can be seen in **Photographs Numbered 19 and 20.** No signs of obvious damage were noted to the seed; however, once again the Consignee expressed concern as to the fact that the seeds felt slightly wet to the touch.

The fourth and last type of seed, which was sampled consisted of the Tagetes, which was also known as Black Lily. Illustrations of the condition of that seed can be seen in **Photographs Numbered 21 through 24.** Once again, we noted no signs of obvious damage to the seed; however, the Consignee was concerned that the seeds felt moist to the touch.

During our conversations with the Consignee, we inquired as to whether the contents of the bags can be skimmed with the portion of the seeds, which were obviously affected by moisture being removed with the balance of the shipment being utilized for its intended purpose. The Consignee stated the only way that they would be able to evaluate the condition of the seed would be to take a random sampling from good bags and bad bags and send them to a lab and have them tested for germination capabilities. Apparently, the laboratory uses chemicals to plant the seeds and observe the germination process to determine if the seeds were affected. The laboratory would then arrive at a percentage of the seeds, which they would consider to be non-usable, with the balance being acceptable. We therefore advised the Consignee that this should be undertaken in an effort to minimize the loss and to determine the actual extent of the damages.

Subsequent to our surveying the seeds in question, we were taken to the Consignee's office and provided with a CD of the photographs showing the condition of the load at the time of delivery. We noted that there was heavy rust stains and obvious signs of


SURVEY REPORT NO. LAX07288500/TMS/DWB    PAGE NO. 6

water contact to numerous bags at the time of devanning. We also noted signs of a white residue supposedly caused due to the contact with moisture on the walls of the container. We inquired as to whether there was any obvious defects to the container at the time of delivery; at which time the Consignee advised us that they noted no signs of obvious defects; however, did comment that the majority of the wet bags were found along the walls of the container and at the rear doors.

During our conversations with Capt. Jolly, the surveyor for the carrier, we were advised that he did complete a survey of the container at the dock prior to it being loaded out onto another vessel. He further stated that the container, at the time of survey was fully loaded with an outbound load therefore, he was unable to visually examine the interior of the container. We were shown the photographs; however, he stated that he would be unable to release the photographs to us without the carrier's permission. We were provided with the name of the Claims Department and we will be contacting them in an effort to obtain copies of these photographs in question. We can state that our examination of the photographs we were being shown, showed no obvious signs of defects to the container.

Subsequent to our original survey, we have been advised by the laboratory that our sampling of the packaging proved negative, indicating that the wetting was caused by fresh water. We attached to this report a copy of the Laboratory Analysis from A.J. Edmond Company regarding the salinity of the sampling examined.

We also attached to this report a copy of the email correspondence between the Consignee and the carrier placing them on notice of claim.

We have also received the results of the laboratory tests of the seeds in question. The Consignee had dried and forwarded a sampling of the seed bags from each species to the lab for testing. The lab results showed that the Russl Minimum Germination Percentage Acceptable for the various seeds were either 60% to 65%, which varied by species. Subsequent to the test being completed, it appears that all but three (3) species type failed to meet the germination minimum qualifications. The balance of the shipment has been rejected by the Consignee.

The claim as presented by the Consignee is as follows:

| Item No. | Item Description | Qty. in Kilo | Unit Price In USD | Total Amount In USD |
|---|---|---|---|---|
| 19023 | Tropaeleum Maj. Scarlet Gleam | 500.00 | 3.78 | 1,890.00 |
| 17947 | Tagetes Pat. Nana Petite Yellow | 49.00 | 7.00 | 343.00 |
| 19022 | Tropaeolum Maj. Golden Gleam | 426.00 | 3.78 | 1,610.28 |



SURVEY REPORT NO. LAX07288500/TMS/DWB    PAGE NO. 7

| 19025 | Tropaeolum Nanum Alaska Mix | 327.00 | 3.78 | 1,236.06 |
| 19015 | Tropaeolum Nanum Empress of India | 669.00 | 3.78 | 2,528.82 |
| 19027 | Tropaeolum Maj. Cherry Rose | 193.50 | 3.78 | 731.43 |
| 19131 | Zinnia El. Willy Rogers | 79.00 | 8.00 | 632.00 |
| 19026 | Tropaeolum Maj. Tall Sgt. Mix | 641.00 | 3.78 | 2,422.98 |
| 19024 | Tropaeolum Maj. Glorious Gleam Mix | 242.00 | 3.78 | 914.78 |
| 19014 | Tropaeolum Nanum Whirly Bird Mix | 500.00 | 3.78 | 1,890.00 |
| 17939 | Thunbergia Alata Mix | 112.00 | 20.90 | 2,340 |
| 17950 | Tropaeolum Maj. Dwarf Jewell Mixed | 12,000.00 | 3.78 | 45,360.00 |

Subsequent to receiving a Sales Authorization for the rejected portion of the shipment, the goods has been placed out for salvage bid. The highest bid being $1,176.00. The check has been forwarded to the Consignee made payable in that amount and should be taken into consideration should any adjustment be made to this claim.

## CAUSE OF DAMAGE:

Based on the documentation, the damages appear to have occurred during transit. Since we were unable to survey the empty container, we were unable to comment as to its condition, other than to state, we noted no obvious damages to it during our review of Capt. Jolly's photographs.

Based on the chloride tests completed by the laboratory, the wetting was due to contact with fresh water.

## DISPOSITION:

The rejected portion of the shipment has been placed out for salvage bid and sold for $1,176.00.

## A SUMMARY OF THE LOSS:

The extent of loss can be summarized as follows, subject to the terms and conditions of the policy of insurance:

| | |
|---|---|
| **Bill of Lading No.:** | MSCUTA011430 |
| **Shipment:** | Flower Seeds |
| **Container No.:** | MSCU1550902 |
| **Invoice Value Quantity Sound:** | $63,688.13 12 Bags |
| **Quantity Damaged:** | 636 Bags |
| **Type of Damage:** | Water damage |
| **Disposition:** | The rejected portion of the shipment salvaged for $1,176.00. |

## RECOVERY TABLE:

| 1. | |
|---|---|
| Name of Carrier: | Mediterranean Shipping Co. (USA), Inc. |
| Address: | 420 Fifth Avenue, 8th Floor New York, NY 10018 |
| Notified: | Yes, on April 10, 2007, by Consignee. |
| Response: | Joint survey completed with Steamship Line Surveyor |
| Delivery Documents: | Requested, but not received |
| Exceptions: | No exceptions taken |

There is a total of __39 Photographs__ depicting the conditions of the shipment at the time of our survey has been previously submitted with our Preliminary Report.

All of our actions in this matter were without prejudice and subject to the terms and conditions of the policy of insurance.

VeriClaim

Dennis Berri
Senior Marine Surveyor

Los Angeles, California
August 9, 2007

DWB:vbl

# EXHIBIT 5

## Lisa Ann Scognamillo

| | |
|---|---|
| **From:** | NYSD_ECF_Pool@nysd.uscourts.gov |
| **Sent:** | Wednesday, August 20, 2008 8:49 AM |
| **To:** | deadmail@nysd.uscourts.gov |
| **Subject:** | Activity in Case 1:08-cv-00223-JSR Liberty Mutual Group, Inc. v. Mediterranean Shipping Company, S.A. Rule 56.1 Statement |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### United States District Court for the Southern District of New York

## Notice of Electronic Filing

The following transaction was entered by Flood, Edward on 8/20/2008 at 8:49 AM EDT and filed on 8/20/2008

| | |
|---|---|
| **Case Name:** | Liberty Mutual Group, Inc. v. Mediterranean Shipping Company, S.A. |
| **Case Number:** | 1:08-cv-223 |
| **Filer:** | Mediterranean Shipping Company, S.A. |
| **Document Number:** | 34 |

**Docket Text:**
**RULE 56.1 STATEMENT. Document filed by Mediterranean Shipping Company, S.A.. (Flood, Edward)**

**1:08-cv-223 Notice has been electronically mailed to:**

Alfred J. Will     awill@badiakwill.com

Edward P. Flood     eflood@lyons-flood.com

Lisa Ann Scognamillo     lscognamillo@badiakwill.com

**1:08-cv-223 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document

8/20/2008

**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=8/20/2008] [FileNumber=4931183-0
] [259c24546102d499b5b9b768106f08db54eb1cdef9cf60a2ef9802304c875fb19c3
b36ce901d98021c24ba49f1033f7de5b9a7ca1767d0aa731c1e5a29c774ba]]

LYONS & FLOOD, LLP
65 W. 36th Street, 7th Floor
New York, NY 10018
(212) 594-2400

Attorneys for Defendant
MEDITERRANEAN SHIPPING COMPANY, S.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

LIBERTY MUTUAL GROUP INC.
as subrogee of BODGER SEEDS, LTD.,

                    Plaintiff,

            - against -

MEDITERRANEAN SHIPPING COMPANY S.A.,

                    Defendant,

-----------------------------------------------------------X

**ECF CASE**

08 Civ. 00223 (JSR)

**COUNTER STATEMENT
TO PLAINTIFF'S RULE 56.1
STATEMENT OF FACTS**

        Defendant MEDITERRANEAN SHIPPING COMPANY, S.A. ("MSC"),

by its attorneys Lyons & Flood, LLP, submits, pursuant to Rule 56.1 of this Court's

Local Civil Rules, a Counter Statement of Facts in response to plaintiff's Rule 56.1

Statement of Facts.

        1.        Admitted.

        2.        Admitted.

        3.        Admit that 648 bags of flower seeds were stored in container

number MSCU1550902 with seal number 1760518.

        4.        Admitted.

        5.        Admitted.

        6.        Admitted.

        7.        Admitted.

8.    Admitted.

9.    Defendants deny that plaintiff has produced sufficient evidence to prove that the seeds were shipped completely dry and in good condition.  The affidavit of Angelina Mbega is insufficient as it does not affirm that Ms. Mbega personally observed the condition of the seeds or was present during their loading into the dry container.

10.    Admitted.

11.    Admitted.

12.    Admitted.

13.    Admitted.

14.    Admitted.

15.    Admitted.

16.    Admitted.

17.    Admitted.

18.    Admitted.

19.    Defendants deny that the cargo damage necessarily occurred in transit during the ocean voyage because, as denied in Paragraph 9 above, plaintiff has not produced sufficient evidence to prove that the seeds were shipped completely dry and in good condition.

20.    Admitted.

21.    Admitted.

Dated: New York, New York
        August 19, 2008


                            LYONS & FLOOD, LLP
                            Attorneys for Defendant
                            MEDITERRANEAN SHIPPING
                            COMPANY S.A.



                            Edward P. Flood (EPF-5797)
                            Michael A. Nemikas
                            65 West 36th Street, 7th Floor
                            New York, New York 10018
                            (212) 594-2400


U:\FLOODDOC\2549114\Motions\Response to Plaintiff's Summ. Jud. Motion\56.1 Counter Statement.doc

# EXHIBIT 6

Revised Form D—For cases assigned to Judge Rakoff <span style="float:right">Effective March 29, 2004</span>
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Liberty Mutual Group, Inc.
<div style="margin-left:2em">Plaintiff(s),</div>

<div style="float:right">CIVIL CASE MANAGEMENT PLAN<br>(JUDGE RAKOFF)</div>

<div style="margin-left:4em">-v-</div>

<div style="float:right">08 Civ. 0223 (JSR)</div>

Mediterranean Shipping Company
<div style="margin-left:2em">Defendant(s).</div>
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<div style="text-align:center">This Court requires that this case shall be <u>ready for trial</u> on<br><u>SEPTEMBER 9, 2008.</u></div>

After consultation with counsel for the parties, the following Case Management Plan is adopted. This plan is also a scheduling order pursuant to Rules 16 and 26(f) of the Federal Rules of Civil Procedure.

A.  The case (is) (is not) to be tried to a jury.  [Circle as appropriate] ✓

B.  Joinder of additional parties must be accomplished by May 7, 2008_____. ✓

C.  Amended pleadings may be filed without leave of Court until May 21, 2008_____. ✓

D.  Discovery (in addition to the disclosures required by Fed. R. Civ. P. 26(a)):

  Done 4/21/08 1.  Documents.  First request for production of documents, if any, must be served by May 14, 2008 ✓. Further document requests may be served as required, but no document request may be served later than 30 days prior to the date of the close of discovery as set forth in item 6 below.

  Done 4/4/08 2.  Interrogatories.  Interrogatories pursuant to Rule 33.3(a) of the Local Civil Rules of the Southern District of New York must be served by May 28, 2008_____. No other interrogatories are permitted except upon prior express permission of Judge Rakoff. No Rule 33.3(a) interrogatories need be served with respect to disclosures automatically required by Fed. R. Civ. P. 26(a).

  p/Done 6/10/08 3.  Experts.  Every party-proponent of a claim (including any counterclaim, cross-claim, or third-party claim) that intends to offer expert testimony in respect of such claim must make the disclosures required by Fed. R. Civ. P. 26(a)(2) by June 11, 2008 ✓. Every party-opponent of such claim that intends to offer expert testimony in opposition to such claim must make the disclosures required by Fed. R. Civ. P. 26(a)(2) by July 1, 2008 ✓. No expert testimony (whether designated as "rebuttal" or otherwise) will be permitted by other experts or beyond the scope of the opinions covered by the aforesaid disclosures except upon prior express permission of the Court, application for which must be made no later than 10 days after the date specified in the immediately preceding sentence. All experts may be deposed, but <u>such depositions must occur within the time limit for all depositions set forth below.</u>

4. <u>Depositions.</u> All depositions (<u>including any expert depositions, see item 3 above</u>) must be completed by ___August 1, 2008___ ✓. Unless counsel agree otherwise or the Court so orders, depositions shall not commence until all parties have completed the initial disclosures required by Fed. R. Civ. P. 26(a)(1) or until four weeks from the date of this Order, whichever is earlier. Depositions shall proceed concurrently, with no party having priority, and no deposition shall extend beyond one business day without prior leave of the Court.

5. <u>Requests to Admit.</u> Requests to Admit, if any, must be served by ___June 11, 2008___ [insert date that is no later than 30 days prior to date of close of discovery as set forth in item 6 below].

6. All discovery is to be completed by ___August 1, 2008___ ✓. Interim deadlines for items 1–5 above may be extended by the parties on consent without application to the Court, provided the parties are <u>certain</u> they can still meet the discovery completion date set forth in this paragraph, which shall not be adjourned except upon a showing to the Court of extraordinary circumstances.

E.    Post-discovery summary judgment motions in the form prescribed by the Court's Individual Rules of Practice may be brought on without further consultation with the Court provided that a Notice of any such motion, in the form specified in the Court's Individual Rules of Practice, is filed <u>no later than one week following the close-of-discovery date (item D-6 above)</u> and provided that the moving papers are served by ___August 9, 2008___ ✓, answering papers by ___August 19, 2008___ ✓, and reply papers by ___August 28. 2008___ ✓ [the last of these days being no later than six weeks following the close of discovery]. Each party must file its respective papers with the Clerk of the Court on the same date that such papers are served. Additionally, on the same date that reply papers are served and filed, counsel for the parties must arrange to deliver a courtesy non-electronic hard copy of the complete set of papers to the Courthouse for delivery to Chambers.

F.    A final pre-trial conference, as well as oral argument on any post-discovery summary judgment motions, shall be held on 9/4/08 @ 2:00 P.M. [date to be inserted by the Court], at which time the Court shall set a firm trial date. The timing and other requirements for the Joint Pretrial Order and/or other pre-trial submissions shall be governed by the Court's Individual Rules of Practice.

G.    All motions and applications shall be governed by Judge Rakoff's Individual Rules of Practice. Counsel shall promptly familiarize themselves with all of the Court's Individual Rules, as well as with the Local Rules for the United States District Court for the Southern District of New York.

SO ORDERED.

_____
JED S. RAKOFF
U.S.D.J.

DATED:   New York, New York
_____

EXHIBIT 7

PORTIONS OF THIS LETTER HAVE BEEN
REDACTED AS THEY MAY, ARGUABLY, PERTAIN
TO SETTLEMENT DISCUSSIONS.

# BADIAK & WILL, LL.

*Attorneys and Proctors in Admiralty*

TELEPHONE: (516) 877-2225
TELEFAX: (516) 877-2230/2240
E-MAIL: ADMIRALAW@AOL.COM

106 THIRD STREET
MINEOLA, NY 11501-4404

FLORIDA OFFICE:
BADIAK, WILL & KALLEN
17071 WEST DIXIE HIGHWAY
NORTH MIAMI BEACH, FL 33160

July 21, 2008

## VIA TELEFAX ONLY 212-594-4589 - URGENT

Lyons & Flood, LLP
65 W. 36th Street, 7th Floor
New York, New York 10018

Attn:  Ed Flood, Esq.

RE:  Liberty Mutual Group Inc., as subrogee of Bodger Seeds, Ltd.
     v. Mediterranean Shipping Company USA
     Index No.: 08 Civ. 00223 (JSR)
     Your Ref.: Please Advise
     Our Ref.: 07-J-001-AW/LS

Dear Mr. Flood:

    We are in receipt of your letter dated July 18, 2008.

Lyons & Flood, LLP
Attn:   Ed Flood, Esq.
July 21, 2008
Page 2

We note that we still have not been provided with ventilation records pertaining to this shipment, or the documents requested in Plaintiff's First Request for Production of Documents dated April 21, 2008.  Nor have we received a response to our letter dated July 15, 2008 requesting outstanding discovery and the scheduling of depositions.  We would like to depose Mr. Mecky and perhaps Captain Jolly.  We reserve the right to take additional depositions after receipt of all outstanding discovery.

Due to the impending deadlines under the Civil Case Management Plan, we intend to seek the Court's intervention no later than tomorrow, July 22, 2008, mid-day.

BADIAK & WILL, LLP

LISA A. SCOGNAMILLO
lscognamillo@badiakwill.com

LAS/lmw

```
**********..ANSACTION REPORT****** JUL 21 2008 MON 04:01 PM
```

FOR:  BADIAK WILL AND RUDDY        12123766778

SEND

| DATE   | START    | RECEIVER     | TX TIME | PAGES | TYPE   | NOTE | M# | DP |
|--------|----------|--------------|---------|-------|--------|------|-----|-----|
| JUL-21 | 04:00 PM | 12125944589  | 27"     | 2     | FAX TX | OK   | 488 |    |

TOTAL :        27S  PAGES:   2

# BADIAK & WILL, LLP

*Attorneys and Proctors In Admiralty*

TELEPHONE: (516) 877-2225
TELEFAX: (516) 877-2230/2240
E-MAIL: ADMIRALAW@AOL.COM

106 THIRD STREET
MINEOLA, NY 11501-4404

FLORIDA OFFICE:
BADIAK, WILL & KALLEN
17071 WEST DIXIE HIGHWAY
NORTH MIAMI BEACH, FL 33160

July 21, 2008

## VIA TELEFAX ONLY 212-594-4589 - URGENT

Lyons & Flood, LLP
65 W. 36th Street, 7th Floor
New York, New York 10018

Attn:   Ed Flood, Esq.

RE:    Liberty Mutual Group Inc., as subrogee of Bodger Seeds, Ltd.
v. Mediterranean Shipping Company USA
Index No.: 08 Civ. 00223 (JSR)
Your Ref.: Please Advise
Our Ref.: 07-J-001-AW/LS

Index No.: 062429CV2007

## **AFFIDAVIT OF SERVICE**

STATE OF NEW YORK     )
                              )SS.:

COUNTY OF NASSAU      )

     **I, Luz M. Webb,** being duly sworn, deposes and says:

     I am not a party to the within action, am over 18 years of age and reside c/o Badiak & Will, LLP, 106 3rd Street, Mineola, New York 11501-4404.  On August 27,  2008  I served the within REPLY MEMORANDUM OF LAW BY PLAINTIFF LIBERTY MUTUAL GROUP, INC., AS SUBROGEE OF BODGER SEEDS, LTD., IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT  on:

          Attn: Edward Flood, Esq.
          Lyons & Flood, LLP
          Attorneys for Defendant - MEDITERRANEAN SHIPPING COMPANY, S.A.
          65 W. 36th Street, 7th Floor
          New York, New York 10018

by depositing a true copy thereof enclosed in a post-paid wrapper in an official depository under the exclusive care and custody of the United States Postal Service within New York State.

                                    LUZ M. WEBB

Sworn to before me this
     day of August, 2008

NOTARY PUBLIC

          JACQUELINE MOORE
      Notary Public, State Of New York
          No. 01MO5019312
        Qualified In Nassau County
    Commission Expires October 18, 2005 2009