UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
LIBERTY MUTUAL GROUP, INC.,
As subrogee of BODGER SEEDS, LTD.,

                Plaintiff,         08 CV 00223 (JSR)

    - against -                   **ECF CASE**

MEDITERRANEAN SHIPPING
COMPANY, S.A.,

                Defendant.

------------------------------------------------------X

**REPLY MEMORANDUM OF LAW BY PLAINTIFF
LIBERTY MUTUAL GROUP, INC., AS SUBROGEE OF
BODGER SEEDS, LTD., IN FURTHER SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

**ALFRED J. WILL**
**LISA A. SCOGNAMILLO**
    **Of Counsel**

# TABLE OF CONTENTS

|  | PAGE |
|---|---|
| Table of Cases Cited................................................................................... | ii, iii |
| Table of Statutes Cited................................................................................ | iii |

**POINT I**

PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE UNDER COGSA.................................................................. 1

**POINT II**

ALLEGED FACTS UNDERLYING MSC'S ARGUMENTS ARE EITHER NOT SUPPORTED OR ARE CONTRADICTED BY THE RECORD................................................................................... 2

**POINT III**

MSC HAS NOT PROVED A DEFENSE TO LIABILITY......................... 4

A. Any Sweat Damage Was Avoidable...................................................... 4

B. No Act or Omission by the Shipper Contributed to the Loss................. 5

C. MSC has not Proved the Damage Occurred without Its Actual Fault or Privity or without the Fault or Neglect of Its Agents............................................................................................ 6

**POINT IV**

THE DAMAGE WAS CAUSED BY MSC'S FAILURE TO PROPERLY CARE FOR THE CARGO...................................................... 7

A. MSC was Negligent................................................................................ 7

B. MSC Failed to Take Into Account the Special Characteristics of the Flower Seeds.................................................................................. 8

C. MSC Failed to Render the Vessels Seaworthy....................................... 9

Conclusion.................................................................................................... 10

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

Associated Metals and Minerals Corp. v. Etelae Suomin Lavia, 858 F.2d 674 (11th Cir. 1988).................................................................... 4

Atlantic Banana Co. v. M.V. Calanca, 342 F.Supp. 447 (S.D.N.Y. 1972), aff,d 489 F.2d 752 (2nd Cir. 1974)...................................... 8

California Packing Corp. v. The Empire State, 180 F.Supp. 19 (N.D. Cal. 1960)................................................................................ 7, 9, 10

Cigna Ins. Co. v. M/V SKANDERBORG, 897 F.Supp. 659 (D.R.P. 1995).................................................................................... 1

Commodity Serv. Corp. v. Boston Ins. Co. & Hamburg-American Line, 1964 A.M.C. 926 (S.D.N.Y. 1964), aff'd. 354 F.2d 234 (2nd Cir. 1965)............................................................................ 2

Compagnie De Navigation Fraissinet & Cyprien, S.A. v. Mondial United Corp., 316 F.2d 163 (5th Cir. 1963)..................................... 4-5

Empire Distr., Inc. v. United States Lines, Inc., 1986 U.S. LEXIS 20379 (S.D. Ga. 1986).................................................................. 6

Metropolitan Coal, 155 F.2d 783-84............................................................ 9

New England Petroleum Co. v. O.T. Shipping Ltd. of London, 732 F.Supp. 1276 (S.D.N.Y. 1990).................................................... 8

Perugina Chocolates & Confections, Inc. v. S/S RoRo Genova, 649 F.Supp. 1235 (S.D.N.Y. 1986)...................................... 2

Roman Crest Foods, Inc. v. S.S. Delta Columbia ex S.S. Santa Clara, 574 F.Supp. 440 (S.D.N.Y. 1983)............................................ 3-4

Spencer Kellogg & Sons v. Great Lakes Transit Corp., 32 F.Supp. 520 (E.D. Mich. 1940)................................................................ 9, 10

Standard Brands, Inc. v. Thos. & JNO. Brocklebank, Ltd., 81 F.Supp. 670 (S.D.N.Y. 1948)................................................................ 7

Standard Oil Co. (N.J.) V. Anglo-Mexican Petroleum Corp. (The Esso Providence), 112 F.Supp. 630 (S.D.N.Y. 1953).................................. 9

The Niel Maersk, 91 F.2d 932 (2nd Cir.) cert. denied, 302 U.S. 753 (1937).................................................................. 2

The Sylvia, 171 U.S. 462 (1898)................................................................ 9

David R. Webb Co., Inc. v. M/V HENRIQUE LEAL, 733 F.Supp. 702 (S.D.N.Y. 1990)................................................................................... 4, 9

Wessels v. The Asturias, 126 F.2d 999 (2nd Cir. 1942)................................ 5

**Statues and Rules**

46 U.S.C. App. ¶1303................................................................................. 7, 9

Fed R. Civ. P. 56(e)..................................................................................... 2

**Other Authorities**

Thomas' Stowage (in small caps)................................................................ 7, fn4

## POINT I.

## PLAINTIFF HAS ESTABLISHED
## A *PRIMA FACIE* CASE UNDER COGSA.[1]

Plaintiff *is* entitled to rely on the clean bill to establish a *prima facie* case of good order upon shipment. The evidence proves beyond doubt that *MSC*, not the shipper, *closed, locked and sealed* the container *with its own seal*. (Mbaga Rep Aff ¶ 10).[2] MSC's bill of lading confirms this. (Deconinck Aff Exh. A- stating *carrier's* seal). Thus, because MSC had an opportunity to inspect the cargo, prior to shipment, Plaintiff is entitled to rely on the clean bill to establish its *prima facie* case. *Cf. Cigna Ins. Co. v. M/V SKANDERBORG*, 897 F. Supp. 659, 661 (D. P.R. 1995). MSC even

---

[1] Significantly, MSC assumes in its own moving papers that Plaintiff established a *prima facie* case under COGSA. (MSC's Memorandum of Law in Support of Motion for Summary Judgment dated August 8, 2008 ("Defendant's Memo") at page 3).

[2] "Mbaga Rep Aff ¶ __" refers to the numbered paragraphs contained in the Reply Affirmation of Angelina Mbaga executed on August 22, 2008. The Mbaga Rep Aff is annexed as Exhibit 1 to the Reply Affidavit of Lisa A. Scognamillo sworn to on August 27, 2008 ("Scognamillo Rep Aff").
"Berri Rep Aff ¶ __" refers to the numbered paragraphs contained in the Reply Affirmation of Plaintiff's surveyor, Dennis Berri, executed on August 25, 2008. The Berri Rep Aff is annexed as Exhibit 2 to the Scognamillo Rep Aff.
"Bodger Rep Aff ¶ __" refers to the numbered paragraphs contained in the Reply Affirmation of Kenneth Bodger executed on August 22, 2008. The Bodger Rep Aff is annexed as Exhibit 3 to the Scognamillo Rep Aff.
The foregoing Reply Affirmations are submitted by Plaintiff in reply to MSC's opposition to Plaintiff's motion and in further support of Plaintiff's motion for summary judgment.

The "Jolly Aff" refers to the Affirmation of Captain Arun Jolly executed on August 7, 2008 submitted by MSC in support of its summary judgment motion. The Jolly Aff is annexed as Exhibit A to the Berri Rep Aff.
"Jolly Supp Aff" refers to the Supplemental Affirmation of Captain Jolly executed on August 19, 2008 and submitted by MSC in opposition to Plaintiff's summary judgment motion.
"Jolly Survey" is annexed as Exhibit B to the Berri Rep Aff and refers to Captain Jolly's inspection of the subject cargo.
"Deconinck Aff" is annexed as Exhibit C to the Berri Rep Aff and refers to the Affirmation of Stefaan Deconinck executed on August 7, 2008 and submitted by MSC in support of its summary judgment motion.
"Berri Survey" is annexed as Exhibit 4 to the Scognamillo Rep Aff and refers to the inspection of the subject cargo by Dennis Berri, Plaintiff's surveyor.

admits that when the carrier seals the container, the shipper may rely on a clean bill. (MSC Opp Memo at 1-2).[3]

Nevertheless, first-hand personal knowledge and observations from the shipper prove the seeds were shipped dry and "were in fit internal order and condition to survive the voyage for which they were booked and in a condition fit for transportation." (Mbaga Rep Aff at ¶¶ 4, 12). This clearly establishes a *prima facie* case under COGSA. *Perugina Chocolates & Confections, Inc. v. S/S Ro Ro Genova,* 649 F. Supp. 1235, 1241 (S.D.N.Y. 1986) (citing *Commodity Serv. Corp. v. Boston Ins. Co. & Hamburg-American Line,* 1964 A.M.C. 926, 939 (S.D.N.Y. 1964), *aff'd,* 354 F.2d 234 (2nd Cir. 1965)). *Accord The Niel Maersk,* 91 F.2d 932, 933 (2nd Cir.) cert. denied, 302 U.S. 753 (1937) (Plaintiff must show goods were delivered to carrier "in a condition fit for transportation.").

## POINT II.

### ALLEGED FACTS UNDERLYING MSC'S ARGUMENTS ARE EITHER NOT SUPPORTED OR ARE CONTRADICTED BY THE RECORD.

MSC alleges that both Plaintiff and MSC's surveyor observed a pattern of fresh water damage, and refers to the location of the wet bags as "against the container's interior sidewalls," (MSC Opp Memo at p. 4). Neither surveyor made any such personal observations.

Captain Jolly's statements are based *solely* upon hearsay, specifically what he heard from an employee of the consignee, Environmental Seed Producers ("ESP"). (Jolly Supp. Aff. ¶ 5; Jolly Survey at 3). Clearly, this is insufficient to defeat summary judgment. Fed. R. Civ. P. 56(e).

Dennis Berri, Plaintiff's surveyor, *never* stated that he observed a pattern of fresh water damage, (Berri Survey at 6), and Mr. Berri *did not* rely on statements from ESP employees for his

---

[3]MSC Opp Mem" refers to MSC's Memorandum of Law submitted in opposition to Plaintiff's Summary Judgment motion dated August 19, 2008.

2

conclusions. (Berri Rep Aff ¶ 28). Mr. Berri maintains he never "examined the wet bags of flower seeds while they were in the subject container," and that he lacks "personal knowledge of the location of the wet bags of flower seeds while they were in the subject container." (Berri Rep Aff. ¶ 26).

Captain Jolly *speculates* that "non-protective packaging" was used. (Jolly Reply Aff ¶ 9). Overwhelming evidence establishes that the type of packaging used, polystyrene woven bags ("PP bags"), was not only appropriate and the usual and customary manner to import flower seeds, but it is the *only* packaging accepted by the United States. (Mbaga Rep Aff ¶ 6; Bodger Rep Aff ¶¶ 3, 4). Bodger Seeds. Ltd., the importer, has imported flower seeds from Maua in the same manner as shipped here (PP bags in dry containers) for the last several years, without incident. (Bodger Reply Aff. ¶ 5; Mbaga Rep Aff ¶¶ 7, 11).

Significantly, during 2006-2007, the time frame of the subject shipment, Maua shipped a total of 15 *dry* containers, as here, with the *same* variety of seeds, in the *same* packaging, in the *same* manner, using the *same* crew and the *same* loading procedure and exiting from the *same* port *without incident, except to this shipment*. Most important is the fact that *all 15 containers were carried by MSC!* (Mbaga Rep Aff ¶ 9) Thus, there clearly is no 'act or omission' by the shipper contributing to this loss, and the fault most certainly lies within the privity and knowledge of MSC and its agents.

MSC next speculates the container was transloaded "without incident aboard four different MCS vessels." (MSC Opp Memo at 6). This allegation should be disregarded because it is conclusory and not supported by a single crew member aboard any of those vessels with personal knowledge. *Cf. Roman Crest Foods, Inc. v. S.S. Delta Columbia ex S. S. Santa Clara*, 574 F. Supp.

3

440, 442 (S.D.N.Y. 1983)(carrier offered testimony of ship's personnel and documentation establishing proper storage of fruit).

MSC further alleges, without support, the "shipper stuffed, *locked and sealed* the container." (MSC Opp Memo at 6) (emphasis added). The shipper's testimony, based upon personal knowledge, *and* the applicable bill of lading submitted by MSC, directly contradict this. (Mbaga Rep Aff ¶ 10; Deconinck Aff. Exh. A). Both expressly state the subject container was sealed with *carrier's* seal.

Finally, MSC's allegation that "all of the evidence shows that the container was in good condition" (MSC Opp Memo at 4) is misleading. Captain Jolly's conclusion about the condition of the container was based upon an admittedly *partial* examination of the exterior and *no* examination of the interior. (Jolly Supp. Aff. ¶ 4; Jolly Survey at 2-3 and annexed photos; Berri Reply Aff ¶¶ 10-12, 22-25).

Since MSC arguments are either speculative or contradicted by the record, MSC fails to raise an issue of fact and Plaintiff's motion for summary judgment should be granted. *David R. Webb Co., Inc. v. M/V HENRIQUE LEAL,* 733 F. Supp. 702, 707 (S.D.N.Y. 1990).

## POINT III.

### MSC HAS NOT PROVED A DEFENSE TO LIABILITY.

#### A. Any Sweat Damage Was Avoidable.

To avoid liability for sweat damage, "the carrier bears the burden of proving that sweating was unavoidable despite all reasonable efforts to avoid it by ventilation or otherwise." *Associated Metals and Minerals Corp. v. Etelae Suomin Lavia,* 858 F.2d 674, 678 (11th Cir. 1988) (citing *Compagnie De Navigation Fraissinet & Cyprien, S.A. v. Mondial United Corp.,* 316 F.2d 163, 169

(5th Cir. 1963)). *Accord Wessels v. The Asturias,* 126 F.2d 999, 1000 (2nd Cir. 1942) (sweat is a peril of sea only when all available precautions are taken to avoid it).

Maua, the shipper, followed its usual routine for this shipment. (Mbaga Rep Aff ¶¶ 6, 7, 9, 10, 11). The subject cargo was appropriately packaged in the usual and customary manner with the *only* material approved by the United States for the import of flower seeds, PP bags. (Bodger Reply Aff ¶¶ 3, 4; Mbaga Rep Aff ¶ 6). The cargo was then loaded in a dry container sealed by MSC. (Mbaga Rep Aff ¶¶ 5, 10). For years, numerous shipments of flower seed have been shipped by Maua from Tanzania to Long Beach, California during the same time of year and in the same manner as here without incident. (Bodger Reply Aff ¶ 5; Mbaga Rep Aff ¶¶ 7, 11). The only differences with the subject shipment were all factors within MCS's *exclusive* control. First, the voyage was unusually long. (Berri Rep Aff. ¶ 18). Second, the container was transloaded aboard *four (4) different vessels.* (Deconinck Aff ¶ 6). Finally, the vessel called at four (4) different ports (Deconick Aff. ¶ 6), when the usual route from Tanzia to Long Beach is through Holland. (Bodger Aff. ¶ 6). Any one or all or a combination of the foregoing factors was the most likely cause of the damage to the seeds. (Berri Rep Aff. ¶ 19). Thus, because any sweat damage was avoidable, MSC cannot escape liability under COGSA'S 'peril of the sea' exception.

### B. No Act or Omission by the Shipper Contributed to the Loss.

As discussed above, Maua followed its normal routine with this subject shipment, which routine has been followed on numerous prior occasions without incident. (Bodger Rep Aff ¶ 5; Mbaga Rep Aff ¶¶ 7, 9, 11). As also discussed above, MSC's allegations regarding "non-protecctive packaging" are unsupported and contradicted by the record as the packaging used here is the *only* packaging approved by the United States government. (Bodger Rep Aff ¶ 4). Further, MSC's

argument regarding use of a refrigerated container fails. Maua shipped a total of 15 containers *with MCS* of the *same* type of container as here containing the *same* variety of flower seeds, without incident except to the subject shipment. (Mbaga Rep Aff ¶ 9).

Thus, MSC cannot claim an exception to liability based upon the shipper's conduct.

Again, the only differences with the subject voyage were all factors within MSC's *exclusive* control, any one of which was the most likely cause of the resulting damage. (Berri Rep Aff ¶ 19).

Even assuming arguendo, there was some conduct on Maua's part which contributed to the loss, which is vehemently denied, MSC still cannot escape liability. Where the carrier claims damage from an excepted cause and the shipper, as here, shows the carrier's negligence was, at least, a concurrent cause, the carrier is liable for the *entire loss* unless the carrier shows the proportion of loss attributable to the excepted cause under COGSA. *Empire Distr., Inc. v. United States Lines, Inc.,* 1986 U.S. LEXIS 20379 (S.D. Ga. 1986) at 14. MSC has not carried this burden.

### C. MSC has not Proved the Damage Occurred without Its Actual Fault or Privity or without the Fault or Neglect of Its Agents.

As discussed above, the record makes clear that the factors which caused the damage to the subject cargo were in the *exclusive* control of MSC. (Berri Rep Aff ¶ 19). As such, MSC cannot claim the benefit of COGSA's "q" exception.

## POINT IV.

## THE DAMAGE WAS CAUSED BY MSC'S FAILURE TO PROPERLY CARE FOR THE CARGO.

### A. MSC was Negligent.

The record establishes that the damage to the subject shipment resulted from MSC's failure to properly care for the cargo as required by COGSA. 46 U.S.C. App. § 1303.

Although some organic cargoes may have a tendency to sweat, normal sweating would not have caused the extensive damage sustained by the subject cargo. (Berri Rep Aff ¶ 7). *Accord California Packing Corp. v. The Empire State,* 180 F. Supp. 19, 22 (N.D. Cal. 1960 (carrier failed to demonstrate extraordinary amount of damage incurred was attributable to peril of sweat that would have remained if all reasonable precautions were taken); *Standard Brands, Inc. v. Thos. & JNO. Brocklebank, Ltd.,* 81 F. Supp. 670, 671, 672 (S.D.N.Y. 1948) (acknowledging witness testimony that excessive sweat could not have been produced in only a few days and was caused by lack of ventilation).

Captain Jolly, MSC's surveyor, speculates that moisture in the flower seeds caused the damage. (Jolly Supp Aff ¶ 3).[4] Again, normal sweating would not have caused such extensive damage. (Berri Rep Aff ¶ 7). Thus, Captain Jolly must be suggesting that the seeds contained excessive moisture. (Berri Rep Aff ¶¶ 6, 8). Such a determination can only be made after confirmed

---

[4] Captain Jolly attests that "flower seeds have a tendency to sweat," (Jolly Supp Aff ¶ 3) and attaches an excerpt from THOMAS' STOWAGE in support. A close reading of the excerpt does not support Captain Jolly's conclusion. THOMAS' STOWAGE states that "*seeds* contain *oil,*" whereas "*seedlings may* give off moisture." (Emphasis added). There is a significant difference between 'seeds,' which are at issue here, and 'seedlings' which form when a seed takes root and begins to sprout. (Berri Rep Aff ¶ 9).

7

by a Moisture Content Test. (Berri Rep Aff ¶ 8). There is no evidence that such a test was performed here. (Berri Rep Aff ¶ 8).

The only plausible explanation supported by the record is that MSC failed to properly care for the cargo. As discussed, the shipper followed its normal routine with regard to the subject shipment. The conditions of the actual transport, which were under MCS's exclusive control, were the only factors that changed. The voyage was unusually long for an organic cargo (Berri Rep Aff ¶¶ 18, 21); the usual route varied significantly with four different ports of call instead of a typical voyage from Tanzania to Long Beach via Holland (Deconinck Aff ¶ 6; Bodger Rep Aff ¶ 6); and the container was transloaded at each port aboard four (4) different vessels (Deconinck Aff ¶ 6). This subjected the container to diverse climates and temperatures which caused damage to the cargo. (Berri Rep Aff 19). Because MSC failed to properly care for the cargo, it should be held accountable.

### B. MSC Failed to Take Into Account the Special Characteristics of the Flower Seeds.

"An ocean carrier is required to know the special characteristics of a cargo it accepts for carriage." *Atlantic Banana Co. v. M.V. Calanca,* 342 F. Supp. 447, 451 (S.D.N.Y. 1972), *aff'd,* 489 F.2d 752 (2nd Cir. 1974). *Accord New England Petroleum Co. v. O.T. Shipping Ltd. of London,* 732 F. Supp. 1276, 1284 (S.D.N.Y. 1990) where the court found "[t]he tendency of . . . oil to congeal if not properly heated does not . . . constitute an inherent vice; it merely requires that the carrier properly care for the Cargo." *Id.*

The same reasoning applies here. The bill of lading issued by MSC expressly listed the shipment as "648 bags of flower seeds," an organic cargo. ("Deconinck Aff. Exh. A). MSC alleges

8

a tendency of the flower seeds to 'sweat.' (Jolly Supp. Aff. ¶ 3 and annexed exhibit). Thus, any tendency the flower seeds had to 'sweat' does not constitute an inherent vice of the cargo absolving MSC from liability. Rather, this tendency imposed a duty upon MSC to properly care for the cargo, particularly since the cargo was in the container for "approximately 90 days." (Jolly Survey at p. 6).

Again, there is no evidence from a single crew member attesting to the fact that the cargo was properly cared for. Summary judgment is thereofore warranted. *Webb,* 733 F. Supp. at 707 (expert's unsupported conclusions insufficient to create a factual issue).

### C. MCS Failed to Render the Vessels Seaworthy.

Under COGSA, a carrier has a duty to properly care for the cargo and to render the vessel seaworthy in connection with that cargo at the start of the voyage. 46 U.S.C. App. ¶ 1303. It is well-settled that "'[t]he test of seaworthiness is whether the vessel is reasonably fit to carry the cargo which she has undertaken to transport.'" *Spencer Kellogg & Sons v. Great Lakes Transit Corp.,* 32 F. Supp. 520, 530 (E.D. Mich. 1940) (quoting *The Sylvia,* 171 U.S. 462, 464 (1898)). When determining seaworthiness, "[t]he nature of the cargo, the time of year in which it is to be carried, and the conditions reasonably to be expected at that time of year" are the factors considered. *Spencer Kellogg,* 32 F. Supp. at 530 (citation omitted). Exceptions to the warranty of seaworthiness are narrowly construed. *Metropolitan Coal,* 155 F.2d at 783-84. *Accord Standard Oil Co. (N.J.) v. Anglo-Mexican Petroleum Corp. (The Esso Providence),* 112 F. Supp. 630, 637 (S.D.N.Y. 1953).

Normal or expected sweating would not have caused the excessive wetting to the subject cargo experienced here. (Berri Rep Aff ¶¶ 14, 15). *See also The Empire State,* 180 F. Supp. at 22 (carrier failed to demonstrate extraordinary amount of damage incurred was attributable to peril of sweat that would have remained if all reasonable precautions were taken).

MSC acknowledges that all vessels involved with the subject shipment encountered normal conditions expected for a winter voyage. (Defendant's Memo at 4, 6). Encountering expected conditions does "not normally result in sweat damage of this magnitude." *The Empire State,* 180 F. Supp. at 22.

MSC' subjected this organic cargo to an unusually lengthy voyage aboard four (4) different vessels, following an unusual route which exposed the cargo to diverse climates and conditions. MSC's failure to timely deliver the organic cargo and take into account the nature of the cargo or length of time carried rendered the vessels unfit for the cargo and thus unseaworthy. *Spencer Kellogg,* 32 F. Supp. at 530. Summary judgment should, therefore, be granted.

## CONCLUSION

For all the foregoing reasons, Plaintiff LIBERTY MUTUAL GROUP, INC.S, As subrogee of BODGER SEEDS, LTD., summary judgment motion should be GRANTED, and Plaintiff should be awarded such other, further or different relief as this Honorable Court deems just and proper.

Dated:   Mineola, New York
August 27, 2008

                                                  BADIAK & WILL, LLP
Attorneys for Plaintiff
LIBERTY MUTUAL GROUP, INC.,
As Subrogee of BODGER SEEDS, LTD.

By: _____
LISA A. SCOGNAMILLO (LS-7706)
106 Third Street
Mineola, New York 11501
(516) 877-2225
Our Ref.: 07-J-011-AW/LS

Index No.: 062429CV2007

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK     )
                      )SS.:
COUNTY OF NASSAU      )

**I, Luz M. Webb,** being duly sworn, deposes and says:

I am not a party to the within action, am over 18 years of age and reside c/o Badiak & Will, LLP, 106 3rd Street, Mineola, New York 11501-4404. On August 27, 2008 I served the within REPLY MEMORANDUM OF LAW BY PLAINTIFF LIBERTY MUTUAL GROUP, INC., AS SUBROGEE OF BODGER SEEDS, LTD., IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT on:

> Attn: Edward Flood, Esq.
> Lyons & Flood, LLP
> Attorneys for Defendant - MEDITERRANEAN SHIPPING COMPANY, S.A.
> 65 W. 36th Street, 7th Floor
> New York, New York 10018

by depositing a true copy thereof enclosed in a post-paid wrapper in an official depository under the exclusive care and custody of the United States Postal Service within New York State.

_____
LUZ M. WEBB

Sworn to before me this
27th day of August, 2008

_____
NOTARY PUBLIC

JACQUELINE MOORE
Notary Public, State Of New York
No. 01MO5019312
Qualified In Nassau County
Commission Expires October 18, 2009